UNITED STATES, Appellee

v.

David J. A. GUTIERREZ, Technical Sergeant
U.S. Air Force, Appellant

No. 13-0522

Crim. App. No. 37913

United States Court of Appeals for the Armed Forces

Argued December 9, 2014

Decided February 23, 2015

BAKER, C.J., delivered the opinion of the Court, in which
ERDMANN, STUCKY, RYAN, and OHLSON, JJ., joined.

<u>Counsel</u>

For Appellant:  Kevin Barry McDermott, Esq. (argued); Captain
Michael A. Schrama (on brief).

For Appellee:  Major Brian C. Mason, (argued); Lieutenant
Colonel Katherine E. Oler and Gerald R. Bruce, Esq. (on brief).

Amicus Curiae for Appellant:  Lieutenant Colonel Jonathan F.
Potter, Captain Aaron R. Inkenbrandt, and Captain Amanda R.
McNeil (on brief) – Army Defense Appellate Division.


Military Judge:  William C. Muldoon Jr.



**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Gutierrez, No. 13-0522/AF

Chief Judge BAKER delivered the opinion of the Court.

Contrary to his pleas, a military judge sitting as a general court-martial convicted Appellant of offenses including aggravated assault, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (2012). He was sentenced to confinement for eight years, a dishonorable discharge, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged, and the United States Air Force Court of Criminal Appeals (CCA) affirmed. United States v. Gutierrez, (Gutierrez I), No. ACM 37913, 2013 CCA LEXIS 1014, at *14, 2013 WL 1319443, at *4, (A.F. Ct. Crim. App. Mar. 21, 2013) (per curiam). This Court granted review based on the improper appointment of a CCA judge,[1] and remanded the case. Gutierrez (Gutierrez II), 73 M.J. 128 (C.A.A.F. 2013). The CCA again affirmed. Gutierrez (Gutierrez III), No. ACM 37913 (rem), 2014 CCA LEXIS 110, at *19, 2014 WL 842651, at *4 (A.F. Ct. Crim. App. Feb. 25, 2014) (per curiam). We then granted Appellant's petition to review his conviction for aggravated assault:

I.   WHETHER THE EVIDENCE IS LEGALLY INSUFFICIENT TO FIND BEYOND A REASONABLE DOUBT THAT APPELLANT COMMITTED ASSAULT LIKELY TO RESULT IN GRIEVOUS BODILY HARM.[2]

---

[1] See United States v. Janssen, 73 M.J. 221 (C.A.A.F. 2014).

[2] We also granted for review issues concerning Appellant's conviction for adultery, and the appellate delay that occurred in this case:

2

Appellant's conviction for aggravated assault stems from his failure to disclose that he had human immunodeficiency virus (HIV) prior to engaging in otherwise consensual sexual activity with multiple partners. Reviewing the evidence in a light most favorable to the prosecution, the expert testimony presented in this case reflects that at most, Appellant had a 1-in-500 chance to transmit HIV to some of his partners. There is no evidence in the record to indicate that Appellant actually transmitted HIV.

Under Article 128, UCMJ, an assault includes an offensive touching. An aggravated assault includes the element that the assault was committed with "a dangerous weapon or other means or force likely to produce death or grievous bodily harm." Article 128(b)(1), UCMJ. Applying a plain English definition of "likely," as well as this Court's precedent regarding aggravated assault outside the context of HIV, testimony that the means used to commit the assault had a 1-in-500 chance of producing death or grievous bodily harm is not legally sufficient to meet the element of "likely to produce death or grievous bodily

---

II. WHETHER THE EVIDENCE WAS LEGALLY SUFFICIENT TO FIND BEYOND A REASONABLE DOUBT THAT APPELLANT COMMITTED ADULTERY.

III. WHETHER THE FACIALLY UNREASONABLE DELAY IN POST-TRIAL PROCESSING DEPRIVED APPELLANT OF HIS DUE PROCESS RIGHT TO SPEEDY REVIEW, PURSUANT TO UNITED STATES v. MORENO, 63 M.J. 129 (C.A.A.F. 2006).

harm." Id. As a result, we reverse Appellant's conviction for aggravated assault, and affirm the lesser included offense (LIO) of assault consummated by battery.

## BACKGROUND

Appellant and his wife participated in what trial testimony described as the "swinger[s']" lifestyle, wherein they engaged in group sexual activities with other couples and individuals. These couples and individuals were civilians whom Appellant generally met over the Internet, and the sexual activity occurred at off-base meetings and parties organized for that purpose.

While stationed at Aviano Air Base, Italy in 2007, Appellant tested positive for HIV. In 2009, Appellant was ordered by his commanding officer to, among other things, "verbally inform sexual partners that [he is] HIV positive" and "use proper methods to prevent the transfer of body fluids during sexual relations, including the use of condoms providing an adequate barrier for HIV (e.g. latex)." Despite having received this order, Appellant did not inform his sexual partners of his HIV-positive status and, in some instances, did not use a condom.

Two of Appellant's sexual partners testified at trial that they trusted his word that he did not have any sexually transmitted diseases because he was a member of the military.

When asked at trial whether they would have engaged in sexual activity with Appellant had they known of his HIV-positive status, Appellant's sexual partners responded in the negative.

HD, one of Appellant's sexual partners, testified that in February 2010, her boyfriend found a document indicating that Appellant had tested positive for HIV. HD knew that Appellant and his wife planned to attend an upcoming swingers' party, and informed the party's organizer of her discovery. The organizer told HD that he would address the issue with Appellant as a rumor, and would allow Appellant and his wife into the party only if they could produce documentation proving that Appellant did not have HIV. In HD's recollection, Appellant and his wife did not attend the party.

HD also informed RD -- HD's ex-husband and a participant in the swingers' lifestyle -- of her discovery. RD testified that, "for protection purposes," he began to disseminate this information among the swingers' community, and confronted Appellant. Appellant denied to RD that he was HIV positive.

Eventually, the staff judge advocate at McConnell Air Force Base contacted the Air Force Office of Special Investigations (AFOSI) to discuss Appellant's conduct. AFOSI interviewed Appellant's wife, who provided information regarding his participation in the swingers' lifestyle and his HIV-positive status. Based on this information, AFOSI "looked at [the case]

as an aggravated assault." AFOSI investigated the matter and eventually apprehended Appellant.

Appellant was charged with aggravated assault. The charges encompassed protected oral sex, unprotected oral sex, protected vaginal sex, and unprotected vaginal sex. At trial, the Government's medical expert, Dr. Donna Sweet, testified that to transmit HIV, "there has to be some seminal -- some fluid of some type." According to Dr. Sweet, the risk of Appellant transmitting HIV during protected oral sex was "zero," and the risk of transmission during unprotected oral sex was "almost zero as well." As to the risk of HIV transmission during protected vaginal sex, Dr. Sweet testified that, when used properly, condoms protect against the transmission of bodily fluids "97 to 98 percent of the time." On the risk of HIV transmission during unprotected vaginal sex, Dr. Sweet testified that:

> [I]t is difficult data to come up with. It's difficult to have a lot of evidence. But the quote is that it is somewhere between 10 and 20 positives per 10,000 encounters. That's sort of the high-end. There are other people that would say 1 out of 10,000 to 1 out of 100,000 given encounters. . . . [I]f you [have sex] two or three nights a week then you've got a lot of exposure even though it's a relatively low risk. . . . But somewhere between 1 and 10 per 10,000 exposures would become infected.

During closing argument, the defense argued that "when you actually apply the elements of aggravated assault and the

6

testimony of Dr. Sweet regarding the actual low risk of transmission in these cases, you will see that he is not guilty [of] aggravated assault[]." The military judge then acquitted Appellant of aggravated assault insofar as the specifications alleged protected oral sex. As a result, Appellant was convicted of aggravated assault encompassing unprotected oral sex, protected vaginal sex, and unprotected vaginal sex.

On appeal, the CCA looked to this Court's 1993 decision in United States v. Joseph, 37 M.J. 392 (C.M.A. 1993), to conclude that "the military judge sitting as the trier of fact could have found all the essential elements beyond a reasonable doubt." Gutierrez III, 2014 CCA LEXIS 110, at *11, 2014 WL 842651, at *3. The Government now argues that we should affirm the conviction for aggravated assault under Joseph, because according to that precedent, "the question is not the statistical probability of HIV invading the victim's body, but rather the likelihood of the virus causing death or serious bodily harm if it invades the victim's body. The probability of infection need only be more than merely a fanciful, speculative, or remote possibility." Joseph, 37 M.J. at 397 (citation and internal quotation marks omitted). Appellant, joined by the Army Defense Appellate Division acting as amicus curiae, responds that we cannot affirm an aggravated assault conviction given the low risk of HIV transmission detailed in the

United States v. Gutierrez, No. 13-0522/AF

Government expert's testimony, which is not "likely" to result in grievous bodily harm under Article 128, UCMJ.

DISCUSSION

"[I]n reviewing for legal sufficiency of the evidence, the relevant question an appellate court must answer is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Oliver, 70 M.J. 64, 68 (C.A.A.F. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "Further, in resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." United States v. Barner, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

Article 128, UCMJ, defines aggravated assault:

> (a)  Any person subject to this chapter who attempts or offers with unlawful force or violence to do bodily harm to another person, whether or not the attempt or offer is consummated, is guilty of assault . . . .
>
> (b)  Any person subject to this chapter who --
>
>> (1)  commits an assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm . . . .
>
> is guilty of aggravated assault and shall be punished as a court-martial may direct.

The question in this case is not whether HIV, if contracted, is likely to inflict grievous bodily harm. Dr. Sweet testified that, if HIV is left untreated, "the natural history is death within the first 12 to 15 years." She testified that HIV can cut an individual's life short even with treatment, and that treatment requires taking antiretroviral drugs "religiously" and maintaining a healthy lifestyle. The infliction of such a disease meets any reasonable definition of "likely" to inflict grievous bodily harm. Appellant has not argued otherwise.

The critical question in this case, however, is whether exposure to the risk of HIV transmission is "likely" to produce death or grievous bodily harm.[3] Put another way, "[h]ow likely is 'likely?'" United States v. Johnson, 30 M.J. 53, 57 (C.M.A. 1990) (citation omitted). In the area of assault through exposure to HIV, our Court "repeatedly has held that the risk of harm need only be 'more than merely a fanciful, speculative, or remote possibility.'" United States v. Weatherspoon, 49 M.J. 209, 211 (C.A.A.F. 1998) (quoting United States v. Klauck, 47 M.J. 24, 25 (C.A.A.F. 1997); Joseph, 37 M.J. at 396–97; Johnson,

_____

[3] At the threshold, Appellant contends in his brief that he has never been validly diagnosed with HIV, and submits post-trial affidavits challenging his diagnosis. Appellant did not challenge the fact of his HIV diagnosis at trial, and is not entitled to relitigate an essential fact of the case before this Court, which is limited to reviewing "matters of law." Article 67(c), UCMJ, 10 U.S.C. § 867(c) (2012).

30 M.J. at 57)).  We do not believe that this statement is consistent with the statutory language of Article 128, UCMJ, as generally applied in the context of Article 128, UCMJ.

There are at least two problems with this Court's prior analysis in Joseph.  First, the Joseph court focused exclusively on the likelihood that death or grievous bodily harm would occur in the event of transmission, without consideration of whether the risk of transmission was itself likely.  37 M.J. at 396-97.  But this Court's case law "does not state that because the magnitude of the harm from AIDS is great, the risk of harm does not matter."  United States v. Dacus, 66 M.J. 235, 240 (C.A.A.F. 2008) (Ryan, J., with whom Baker, J., joined, concurring).  As one commentator has noted, "Joseph ignores the fact that it is not the weapon that must likely cause great harm, but rather the manner in which it is used must be likely to cause the resulting harm."  Ari E. Waldman, Exceptions:  The Criminal Law's Illogical Approach to HIV-Related Aggravated Assaults, 18 Va. J. Soc. Pol'y & L. 550, 591 (2011).  We agree.  See United States v. Vigil, 3 C.M.A. 474, 476-77, 13 C.M.R. 30, 32-33 (1953) ("The crucial question is whether [the weapon's] use, under the circumstances of the case, is likely to result in death or grievous bodily harm.").

Second, Joseph adopted a definition of "likely" that appears to be sui generis to HIV cases and is not derived from

10

the statute itself. "Likely" is not defined in Article 128, UCMJ. But nowhere in the UCMJ, in the dictionary, or in case law, is "likely" defined as "more than merely a fanciful, speculative, or remote possibility" as it is in HIV cases. See, e.g., United States v. Outhier, 42 M.J. 626, 635 (N-M. Ct. Crim. App. 1995) (DeCicco, J., concurring in part and dissenting in part) ("[T]he standard announced in Joseph and Johnson defining a 'means likely' should not be extended to this [non-HIV] case.").

It must be correct that "[t]here is only one standard: Whether the means used [in the assault] were 'likely to produce death or grievous bodily harm.'" Outhier, 45 M.J. 326, 328 (C.A.A.F. 1996). More fundamentally, criminal defendants charged under a statute are entitled to equal application of that statute, because the principle of "'equality before the law . . . gives to the humblest, the poorest, the most despised [person] the same rights and the same protection before the law as it gives to the most powerful, the most wealthy, or the most haughty.'" Jones v. Helms, 452 U.S. 412, 424 n.23 (1981) (quoting Cong. Globe, 39th Cong., 1st Sess. 2766 (1866) (statement of Sen. Howard)).

Thus, "likely" must mean the same thing in an Article 128, UCMJ, prosecution for an aggravated assault involving HIV transmission as it does in any other prosecution under the

11

statute.  In determining whether grievous bodily harm is likely,
therefore, one conception is whether grievous bodily harm is the
"'natural and probable consequence'" of an act.  Weatherspoon,
49 M.J. at 211 (quoting Manual for Courts-Martial, United States
pt. IV, para. 54c(4)(a)(ii) (MCM)).  The ultimate standard,
however, remains whether -- in plain English -- the charged
conduct was "likely" to bring about grievous bodily harm.  As
related to this case, the question is:  was grievous bodily harm
the likely consequence of Appellant's sexual activity?

As to unprotected oral sex, the expert testimony in this
case is that the risk of HIV transmission was "almost zero."
According to Dr. Sweet's testimony,[4] that risk does "[n]ot
really" change in the case of ejaculation.  There should be no
question that a risk of "almost zero" does not clear any
reasonable threshold of probability, including under the rubric
this Court has heretofore applied in HIV-exposure cases, which
required that the risk must be more than "fanciful, speculative,
or remote."  Joseph, 37 M.J. at 397 (citation and internal
quotation marks omitted).  Appellant's conviction for aggravated
assault, to wit, engaging in unprotected oral sex without
disclosing his HIV-positive status, is legally insufficient

---

[4] We note that Dr. Sweet's testimony is consistent with
information on HIV transmission risk published by the Centers
for Disease Control.  See Centers for Disease Control and
Prevention, http://www.cdc.gov/hiv/policies/law/risk.html (last
updated July 1, 2014).

because no rational trier of fact could conclude that his conduct was likely to cause grievous bodily harm. Jackson, 443 U.S. at 319.

In the case of protected vaginal sex, we have previously concluded that "[t]he fact that a male uses a condom during sexual intercourse is not a defense to [aggravated] assault." Klauck, 47 M.J. at 25. That conclusion does not, however, answer the question presented, which is whether Appellant's conduct was likely to inflict grievous bodily harm.[5] The expert testimony in this case makes clear that condom use protects against the transmission of bodily fluids in ninety-seven to ninety-eight percent of cases, and that any HIV transmission risk only obtains in the transmission of bodily fluids. Further, Dr. Sweet, the Government's expert witness, agreed with trial defense counsel that the risk of HIV transmission in the case of protected vaginal sex was only "remotely possible," meaning the conviction cannot be sustained even under Joseph. Appellant's conviction for aggravated assault by protected vaginal sex is legally insufficient, and Klauck is expressly overruled.

---

[5] Arguing from Klauck, 47 M.J. at 26, the Government asserts that we should disregard the efficacy of condom use because condoms are not infallible, and condoms must be used properly to combat sexually transmitted disease. Nothing in the record suggests that the condoms Appellant used were defective or improperly employed, and so no basis exists to question the utility of condoms in this case.

Turning to unprotected vaginal sex, Dr. Sweet's testimony put the maximal risk at 20 out of 10,000, which equates to 1 in 500. She described this figure as the "high-end" statistic, and appears to have concluded in her own assessment that "between 1 and 10 per 10,000 exposures would become infected."[6] In any event, accepting the high-end statistic of 1-in-500 exposures resulting in HIV transmission from unprotected vaginal intercourse consistent with our obligation to construe the evidence in the light most favorable to the prosecution under Jackson, we conclude that HIV transmission is not the likely consequence of unprotected vaginal sex. This is so because, in law, as in plain English, an event is not "likely" to occur when there is a 1-in-500 chance of occurrence. As a result, Appellant's conviction for aggravated assault by engaging in unprotected vaginal sex is legally insufficient under Jackson.

That Appellant's conviction for aggravated assault is legally insufficient does not mean that Appellant's conduct is beyond the reach of military criminal law. Unlike several other jurisdictions that have created statutory crimes of HIV nondisclosure, Congress has not criminalized HIV nondisclosure

---

[6] This Court is cognizant that the experts in these cases are dealing in magnitudes of probability, not mathematical certainty. The legal question in all aggravated assault cases remains whether the infliction of grievous bodily harm is "likely" to come about.

in the UCMJ.  Thus, prosecutors have relied on generally

applicable punitive articles to litigate these cases.  See Derek

J. Brostek, Prosecuting an HIV-Related Crime in a Military

Court-Martial:  A Primer, Army Law., Sept. 2009, at 29 ("The

most common methods of charging HIV-related misconduct under the

UCMJ are aggravated assault under Article 128, violation of a

'safe-sex' order under Article 90 or 92, and conduct that is

prejudicial to good order and discipline and/or service

discrediting under Article 134.") (footnotes omitted).  There is

nothing improper regarding the government's reliance on

generally applicable statutes to prosecute criminal conduct, but

in cases involving HIV exposure, the government will be held to

its burden of proving every element of the charged offense in

the same manner that is required in other cases invoking the

same statute.  As Judge Wiss wrote in his separate opinion in

Joseph:

> [W]hen the Government comes before a court of law and tries
> to fit a round peg of conduct into a square hole of a
> punitive statutory provision, it is not the proper function
> of the court to reshape the hole so that it will accept the
> peg and, in the process, distort the hole's character.
> Rather, it is the proper limit of the court's function to
> consider whether the hole -- politically determined --
> already is large enough so that the peg fits within it.

37 M.J. at 402 (Wiss, J., concurring in the result).

Judge Wiss's concern that the law should not adopt a sui

generis standard in cases involving HIV exposure should have

15

governed in Joseph, and similar concerns guide our decision today. On this record, the Government failed to prove that any of Appellant's acts were "likely" to transmit HIV, i.e., that HIV transmission was "likely" in the sense of applying plain English in the context of the facts and circumstances presented in this case. Thus, Appellant's conviction must be reversed as to each specification of aggravated assault.

In the place of aggravated assault, the Government urged this Court at oral argument to affirm offenses of attempted aggravated assault. The Government has not proven the elements of that offense. An attempt requires "specific intent to commit [the] offense," Article 80(a), UCMJ, 10 U.S.C. § 880(a) (2012). Thus, an attempted aggravated assault charge may lie when an accused knew he was infected with HIV and, using a syringe of his blood or intentionally using his body as a weapon, specifically intended to inflict grievous bodily harm as demonstrated by the evidence at trial. No evidence of specific intent to inflict grievous bodily harm was presented in this case.

The question remains whether the evidence is legally sufficient to affirm a lesser included offense of assault. The offense of assault consummated by battery requires that the accused "did bodily harm." MCM pt. IV, para. 54.b.(2). "'Bodily harm' means any offensive touching of another, however slight."

16

MCM pt. IV, para. 54.c.(1)(a).  Here, Appellant's conduct included an offensive touching to which his sexual partners did not provide meaningful informed consent.  See R. v. Cuerrier, [1998] 2 S.C.R. 371, 372 (Can.) ("Without disclosure of HIV status there cannot be a true consent.").  He is therefore guilty of assault consummated by battery, and we affirm that offense as a lesser included offense of aggravated assault.  See United States v. Girouard, 70 M.J. 5, 9 (C.A.A.F. 2011) ("Article 79, UCMJ, [10 U.S.C. § 879 (2012)] provides the statutory authority . . . for an appellate court to affirm . . . an LIO.").

CONCLUSION

We expressly overrule United States v. Joseph, 37 M.J. 392 (C.M.A. 1993), and hold that Appellant's conviction for aggravated assault is legally insufficient.[7]  The decision of the

---

[7] The conviction for adultery is legally sufficient, and affirmed.  Adultery requires that the accused (1) wrongfully had sexual intercourse with a certain person; (2) that, at the time, the accused or the other person was married to someone else; and (3) that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.  MCM pt. IV, para. 62.b.  In this case, Appellant's conduct was wrongful because he violated his commanding officer's order to obtain informed consent and use protection prior to engaging in sexual activity.  For these same reasons, Appellant's conduct falls outside of the constitutional liberty interest recognized in Lawrence v. Texas, 539 U.S. 558 (2003), and applied to the military justice system through United States v. Marcum, 60 M.J. 198 (C.A.A.F. 2004).  The participation of Appellant's wife in the offense is immaterial to the question

United States Air Force Court of Criminal Appeals is reversed as to the allegations of aggravated assault set forth in Charge III and its specifications.  Accordingly, Charge III and its specifications are affirmed only as to the lesser included offense of assault consummated by battery.  The lower court's decision as to the remaining charges and specifications is affirmed, but its decision as to the sentence is reversed.  The record of trial is returned to the Judge Advocate General of the Air Force for remand to the lower court for its determination to either reassess the sentence or to set aside the sentence and order a rehearing.  On remand, the CCA shall also consider whether Appellant's due process rights were violated by the facially unreasonable appellate delay that occurred in this case.  See United States v. Moreno, 63 M.J. 129 (C.A.A.F. 2006).

---

presented, which is whether the Government presented legally sufficient evidence at trial to sustain the conviction.