WOLFE, J.
concurring:
In United States v. Gutierrez, our superior court addressed a case of aggravated assault under Article 128, UCMJ, involving sex that included the undisclosed risk of transmission of human immunodeficiency virus (HIV). 74 M.J. 61 (C.A.A.F.2015). The, Court of Appeals for the Armed Forces (C.A.AF.) noted that prosecutors lacked a specific punitive article addressing such misconduct and have instead “relied on generally applicable punitive articles to litigate these cases.” Id. at 67. Our superior court analogized charging such conduct under aggravated assault as trying to “fit a round peg of conduct into a square hole of a punitive statutory provision.” Id. (quoting United States v. Joseph, 37 M.J. 392, 402 (C.M.A.1993) (Wiss, J., concurring in the result)).[1]
*679 Specifically, the C.A.A.F. was concerned that military law had “adopted a definition of ‘likely’ that appears to be sui generis to HIV cases_” Id. at 66. The court echoed Judge Wiss’s concern in Joseph that “the law should not adopt a sui generis standard in-cases involving HIV exposure ... and [that] similar concerns guide our decision today.” Id. at 67.
As the parties and practitioners will surely note, this court’s opinion today addresses a case that does not involve the risk of transmission of HIV.- Nor does this case involve interpreting the offense of aggravated assault under Article 128, UCMJ. Rather, this case involves determining whether appellant criminally endangered his fellow, soldiers when he “pencil packed” faulty parachutes. Thus, while it appears that our superior court’s opinion in Gutierrez may have been intended to address the narrow line of cases involving HIV,[2] today the majority opinion is compelled to apply Gutierrez to entirely different circumstances.
I concur with the majority’s opinion. Fidelity to our superior court’s decision, which emphasized the necessity of “one standard,” requires applying Gutierrez to all relevant cases, including this one. Id. at 66. I write separately only to express some separate views about the effect of this universal application.

A. Defining the Lower Bound of “Likely”

If Gutierrez made one point clear, it is that it is no longer good law to define likely as “more than merely [a] fanciful, speculative, or remote possibility.” 74 M.J. at 65 (citations and internal quotation marks omitted). It is also clear that the intent of our superior court was that this “floor” on the definition of “likely” was inappropriately low. That is, the Gutierrez court would have surely agreed that a fanciful, speculative or remote possibility always failed to constitute a “likely” possibility. Therefore, the C.A.A.F.’s apparent fear was that a panel, presented with evidence that was only a tad more than fanciful, might convict inappropriately. In other words “likely” means more than “more than merely a fanciful, speculative, or remote possibility.”
My initial concern is that by deleting the lower bound of the definition of “likely,” we invite the very result that the C.A.A.F. appears to have been trying to avoid. Prior to Gutierrez, a panel was at least instructed that a fanciful, speculative or remote possibility was insufficient to establish guilt.[3] What *680 instruction now guides a panel away from finding that “a fanciful, speculative, or remote” possibility falls within the definition of likely? Put simply, if the examples of probabilities (e.g., fanciful, etc.) at the lower bound of the definition of “likely” were insufficient to protect an accused against a wrongful conviction, they should be replaced, not deleted.
While this danger was perhaps not presented in Gutierrez, it is not difficult to imagine a case where informing the panel that the definition of “likely” excludes possibilities that are fanciful, remote or speculative serves to prevent—rather than cause—an unjust verdict for the accused. Consider the defense counsel who could previously argue that an event was “speculative” or “remote” and then have his arguments backstopped by the military judge’s instructions on those same words. Now such counsel may only argue that an event is not- “likely.”[4] If pressed, given both this court’s and C.A,A,F.’s reluctance to further define the word, a military judge may resist providing further explanation beyond the admonition that the panel apply the “plain English definition” as stated by the C.A.A.F. Gutierrez, 74 M.J. at 63.
The majority, correctly, follows Gutierrez and declines to define the lower bound of “likely” with any more precision than our superior court. I write separately because I see a new risk that an accused is convicted on legally insufficient evidence. I see no harm in informing a panel that criminal liability does not attach to fanciful, speculative, or remote possibilities of harm. This was as true before Gutierrez as it is after.

B. Purpose of Reckless Endangerment and the Upper Bound on the Definition of “Likely”

On appeal, and emphasized during oral argument, appellant asserts that “likely” means “more likely than not.” While I concurred above -that our ability to further define “likely” is controlled by our superior court’s opinion in Gutierrez, I believe we are compelled to answer the question posed by appellant. For" me, at least, whether the evidence is factually sufficient turns on the issue. In United States v. Pease, the C.A.A.F. stated that “in light of [our] responsibility” to apply the law to the facts in conducting our factual sufficiency analysis, we must “determine the correct, applicable law” in a case. 75 M.J. 180, 184 (C.A.A.F.2016) (finding no error in the Navy-Marine Corps Court of Criminal Appeals defining the meaning of an element).
If in determining the meaning of “likely” the danger of setting the bar too low risks an accused’s improper conviction, the danger of setting the bar too high falls on society. The President has explained that the offense of reckless endangerment “is intended to prohibit and therefore deter reckless or wanton conduct that wrongfully creates a substantial risk of death or grievous bodily harm to others.” Manual for Courts-Martial, United States (2012) [hereinafter MCM ], pt. IV, ¶ 100a.e.(l) (emphasis added). That is, the purpose of this offense is to prevent dangerous reckless conduct.
Viewed through the lens of the President’s explanation, and especially as applied to the offense of reckless endangerment, I agree with the majority’s analysis of. the definition of “likely.” In order to capture the “substantial risk” of death or grievous bodily harm, the President has proscribed reckless conduct that is “likely” to result in grievous bodily harm. The majority properly rejects appellant’s assertion that “likely” must be synonymous with “most likely” or “more likely than not.”[5]
The President’s crafting of the offense of reckless endangerment would be incongruous if one could create a “substantial risk” of *681 death or grievous bodily harm, but have that same risk be un-likely to result in death or grievous bodily harm. In other words, one does not deter the reckless creation of substantial risks of death and grievous bodily harm—as the President said was the intent—if such conduct is not included within the ambit of “likely.” The majority’s citation to treatise and case law amply bears this out. And, on this matter, we are not blazing a new trail but are instead treading on well-worn ground. See 2 Wayne R. LaFave, Substantive Criminal Law § 14.4(a), at 437 (2d. ed. 2003); Black’s Law Dictionary (10th ed. 2014) (definitions of likely include “showing a strong tendency; reasonably expected”). As the United States Court of Appeals for the Third Circuit said in a different context: A “likelihood of success on the merits” means that a plaintiff has “a reasonable chance, or probability, of winning.” Singer Mgmt. Consultants, Inc. v. Milgram, 650 F.3d 223, 229 (3d Cir.2011) (en banc). It “does not mean more likely than not.” Id.
One who places a single round in a revolver and pulls the trigger while pointing the weapon at someone’s head has created the substantial risk of death. As cited by the majority, two definitions of likely include “justifying belief or occurrence” and “might well happen.” Death is likely if you attempt to fire a partially loaded revolver at someone.[6] Death is the “natural and probable consequence” of that act. See MCM, pt. IV, ¶ 100a.e.(5) (explaining that one may infer a result is “likely” if the result is the natural and probable consequence of the conduct).
CONCURRENCE CONCLUSION
In the present case, appellant’s misconduct was likely to cause death or bodily harm to his fellow soldiers. That an improperly packed reserve parachute would result in death or grievous bodily harm was foreseeable, likely, and would have been the natural and probable outcome of his actions, even if, as appellant asserts, the government failed to prove that such an event was more likely than not.[7]
More generally, I do not have confidence that the “plain English definition” of “likely” provides clear guidance to the fact finder. There are numerous definitions of “likely” that fall all along the spectrum of probability. Appellant’s assertion that “likely” means “more likely than not,” while rejected, is not without support. Furthermore, if the definition of “likely” is “plain” it surely could be restated in an opinion. Instead, the majority finds itself declining to be as precise as it may have been absent Gutierrez. United States v. Herrmann, 75 M.J. 672, 678 (Army Ct.Crim.App.2016).
Given the many and varied definitions of “likely” contained in standard English dictionaries, we risk inconsistent application of the term—incurring at least some risk to both the accused and society. If I were writing on a clean slate, I would adopt the definition of “likely” included in Black’s Law Dictionary of “reasonably expected.” By requiring that the definition include an aspect of “reasonableness” we ground the definition in law, satisfy our superior court’s requirement that the definition meet some “minimum threshold of probability,” avoid confusion regarding “remote,” “speculative,” or “fanciful” possibilities, and provide guidance to the fact finder regarding a term which is used in everyday English but with a variety of meanings. However, I concur with the majority because—as to the definition of “likely’’—we are required to follow our superior court’s determination that the “plain English definition” shall apply. Thus, while we must address appellant’s contention that “likely” means “more likely than not” to make a factual sufficiency determination in this case, we should not further define the term.

. The C.A.A.F. found, as a matter of law, that a victim cannot meaningfully consent to sexual intercourse without the disclosure of HIV sta *679 tus, and that the sexual act therefore constituted “bodily harm.” Gutierrez, 74 M.J. at 67-68. In Gutierrez the C.A.A.F. found the failure to disclose appellant’s HIV status constituted an "offensive touching” as his partners "did not provide informed meaningful consent.” Id. Accordingly, the proper charge would be either 1) sexual assault by bodily harm; or 2) assault consummated by battery. UCMJ arts. 120(b)(1)(B), 128(a). In other words, the focus of the offense is not the risk of transmission of an infectious disease and its resulting harm, but rather whether the sexual conduct was consensual. With that reasoning, the Gutierrez court affirmed the lesser-included offense of assault consummated by battery as the victim had not provided meaningful consent. 74 M.J. at 68. As is discussed below, however, the issue in this case—while also turning on the definition of "likely”—is not a matter of whether the government was trying to place a round peg into a square hole. Reckless endangerment is certainly the appropriate "hole” for appellant's alleged misconduct. The issue, instead, is whether the government has met its burden of proof that appellant's conduct was "likely” to cause death or grievous bodily harm.

. Specifically, our superior court stated that the definition of "likely” in Gutierrez was sui generis to HIV cases. Id. at 66 ("nowhere in the UCMJ, in the dictionary, or in case law, is ’likely’ defined as 'more than merely a fanciful, speculative, or remote possibility' as it is in HIV cases.”). As this case demonstrates, however, the definition of likely discussed in Gutierrez has been applied to all manner of cases of aggravated assault and reckless endangerment. See, e.g., Dep’t of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, paras. 3-54-8.d n.4 (Aggravated Assault), 3-100a-l.d n,2 (Reckless Endangerment) (10 Sept. 2014) (describing the instruction appropriate for any case, where the likelihood of death or grievous bodily harm is at issue).

. Stated differently, the Gutierrez court saw the requirement that the risk be "more than merely a fanciful, speculative, or remote possibility” as a sword that improperly exposed the accused to criminal liability. The court appeared to interpret this phrase as inferring that anything more than a fanciful, speculative or remote possibility met the definition of likely. As such, the definition was insufficient. At least in some cases, however, the definition also served as a shield that protected the accused.

. Arguably this was the case in Gutierrez. In Gutierrez, the court noted that the government's own expert testified that the risk of HIV transmission was only "remotely possible," Id. at 67 (emphasis added). Thus, in Gutierrez the appellant could have used the instructions on "remote"-—now inapplicable—to argue that the government had failed to meet their burden of proof.

. “More likely than not” is a familiar standard under the law (i,e„ "preponderance"). Surely, if our superior court in Gutierrez intended "likely" to mean "more likely than not” they would have said so.

, If “likely” were understood to mean "more likely than not” death would only be "likely” if at least four of the six chambers were loaded.

. Consider that appellant would be no more guilty (or less) of this offense if his actions had in fact resulted in death or grievous bodily harm. It is a complete defense to the crime of reckless endangerment that, although death was in fact caused, death was not "likely." Reckless endangerment punishes the reckless, not the unlucky.