# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, A.C. RUGH, T.P. BELSKY**
Appellate Military Judges

## UNITED STATES OF AMERICA

v.

## NIGIL L. SMITH
## SERGEANT (E-5), U.S. MARINE CORPS

## NMCCA 201500361
## GENERAL COURT-MARTIAL

**Sentence Adjudged:** 2 July 2015.
**Military Judge:** Maj M.D. Zimmerman, USMC.
**Convening Authority:** Commanding General, Marine Corps Recruit Depot/Western Recruiting Region, San Diego, CA.
**Staff Judge Advocate's Recommendation:** Maj J.V. Munoz, USMC.
**For Appellant:** LT Doug Ottenwess, JAGC, USN.
**For Appellee:** LCDR Justin Henderson, JAGC, USN; Capt Matthew M. Harris, USMC.

**12 May 2016**



## OPINION OF THE COURT

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A panel of members with enlisted representation, sitting as a general court-martial, convicted the appellant, contrary to his pleas, of one specification of assault consummated by battery on a child under the age of sixteen, one specification of assault consummated by battery, and one specification of aggravated assault with force likely to produce death or grievous bodily harm, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928. The members sentenced the appellant to 40 months' confinement, reduction to pay grade E-1,

forfeiture of all pay and allowances for 40 months, and a dishonorable discharge. The convening authority approved the sentence.[1]

The appellant now raises two assignments of error (AOE): (1) that his aggravated assault conviction was legally and factually insufficient, and (2) that his sentence was inappropriately severe. We disagree with both.

## BACKGROUND

In December 2014, the appellant and his family lived on board Hill Air Force Base, Utah, while the appellant was assigned to a local recruiting station. However, the appellant's relationship with his wife was significantly strained, and they had each threatened divorce on several occasions.

The day after Christmas, the appellant came to his wife, stating, "I need you to come look at [our son]."[2] His wife followed him to the dining room where she found their two-year-old son lying on the table with a wet rag over his stomach and chest. When the appellant's wife asked about what happened, the appellant admitted to hitting his son in the stomach and the chest and squeezing his son's cheeks because he wouldn't cooperate during feeding. He also admitted to biting his son's toe "because it was something else for him to do."[3]

The appellant's acts resulted in blunt trauma to his son's abdomen and extensive bruising to his son's back where it rested against the high chair. Grabbing his son's cheeks resulted in several puncture marks in both cheeks, and biting his son's toe resulted in cuts, resembling teeth impressions, to the top and the bottom of the toe. When the appellant's wife attempted to document the injuries with her camera phone, the appellant snatched it away. When she recovered the phone, he grabbed her upper arm with sufficient strength to leave bruises. The altercation ended when the appellant's wife left their residence.

Two days later, on 28 December 2014, the appellant and his wife fought again. The fight, precipitated by a disagreement over what to prepare their four-year-old daughter for breakfast, quickly escalated. In response, the appellant picked up his wife, carried her to their bedroom, and threw her on her back onto the bed. Straddling her, he then grabbed a memory foam pillow from the bed and held it against her face. The appellant held the pillow against her until, through a combination of struggling and their daughter calling out to him, the appellant stopped and left the room. The appellant's wife called her sister and mother to report the fight, but hung up after a brief conversation, fearing the appellant would find out.

Within minutes, the appellant returned to the room and again pushed the pillow over his wife's face. At trial, she testified about this attack:

---

[1] In an act of clemency, the convening authority waived automatic forfeitures for a period of six months from the date of his action.

[2] Record at 268.

[3] *Id.* at 269.

Q: What were you thinking as he pushed the pillows down onto your face?
A: I thought this was it for me.

Q: How long did it feel?
A: Forever.
. . . .

Q: Were you struggling to breathe?
A: Yes.

Q: Can you describe what you did to get him off of you?
A: I kind of held my breath, and I just stopped moving, and I just got, like, this blank look in my eyes.

Q: And what did he do when you stopped moving?
A: He got off of me.

Q: And did he leave the room immediately?
A: No.  He kind of just looked at me, and then he left.

Q: Did you move?
A: No.

Q: What were you doing?
A: Pretending I was dead.
. . . .

Q: [A]s that pillow was pushing down onto your face, could you breathe?
A: No.

Q: Were you afraid you were going to die?
A: Yes.[4]

Subsequently, the pillow was seized by investigators and revealed a mark on one side the size and shape of a person's mouth.  No observable injuries attributable to the smothering incident were documented during a subsequent medical evaluation.

## DISCUSSION

### Legal and Factual Sufficiency of the Aggravated Assault Conviction

The appellant asserts the evidence is legally and factually insufficient to support the members' guilty findings as to aggravated assault.  Specifically, the appellant argues that the evidence regarding his placing a pillow over his wife's face was insufficient to prove that he used force in a manner likely to produce death or grievous bodily harm.

---

[4] *Id.* at 280-81.

3

In determining whether death or grievous bodily harm is likely, "[t]he ultimate standard. . . remains whether—in plain English—the charged conduct was 'likely' to bring about grievous bodily harm. . . [T]he question is: was grievous bodily harm the likely consequence of [a]ppellant's. . . activity?" *United States v. Gutierrez*, 74 M.J. 61, 66 (C.A.A.F. 2015). In other words, "one conception is whether grievous bodily harm is the 'natural and probable consequence' of an act." *Id.* (citing *United States v. Weatherspoon*, 49 M.J. 209, 211 (C.A.A.F. 1998) (quoting MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 54c(4)(a)(ii)).

Factors helpful in determining whether grievous bodily harm was the likely consequence of an act include the circumstances surrounding the act and resulting harm, the degree of force used, the foreseeability of the harm, whether grievous bodily harm actually occurred, and the nature of the weapon. However, the nature of the weapon is not conclusive. "The crucial question is whether [the weapon's] use, under the circumstances of the case, is likely to result in. . . grievous bodily harm." *United States v. Franklin*, No. 201500130, 2015 CCA LEXIS 414 at *7-*8, unpublished op. (N.M.Ct.Crim.App. 6 Oct 2015) (per curiam) (alterations in original) (quoting *United States v. Vigil*, 13 C.M.R. 30, 32-33 (C.M.A. 1953)).

We find ample evidence in the record that death or grievous bodily harm was a likely consequence of the appellant smothering his wife with a pillow. The appellant was an amateur bodybuilder, significantly larger and stronger than his wife. During the attack, he straddled her and proceeded to hold a dense, memory foam pillow against her face. This was done with sufficient force that his wife could not breathe and with sufficient pressure that it left a lasting mark in the pillow. Despite struggling, the appellant's wife was unable to remove the pillow from her face, and she was only able to stop the appellant's attack by simulating death. There is sufficient evidence for the trier of fact and for us to conclude that the appellant assaulted his wife using force in a manner likely to produce death or grievous bodily harm.

**Sentence Appropriateness**

In accordance with Article 66(c), UCMJ, a military appellate court "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

We find the adjudged sentence in this case appropriate under the circumstances. The appellant attacked and injured his two-year-old son, employing violence against his son to include hitting him in the stomach, puncturing his cheeks with his fingernails, leaving teeth marks in his toe, and causing bruises to his back—acts that were intended to cause and did cause injury to his infant child. He exacted similar violence against his wife, assaulting her in front of their two children.

These attacks have had an impact on his children. As the appellant's mother-in-law testified in presentencing:

> [The appellant's son] at this time, he doesn't talk. He is almost three years old and he doesn't talk. When I do–sometimes we play some games with him, he cries. . . . He gets so scared when I try to hold him a little bit harder than—that the thinks it's [inaudible]. It's very hard for him.[5]

Regarding the appellant's daughter, his mother-in-law continued:

> [S]ometimes when she hears some sounds—like, if for something like this— some—she says, "Oh, that sounds like when my dad was hitting mommy." And he said—I ask her, "What do you do when you hear that?" She said, "I was smacking the door, I was kicking the door, trying to let my dad leave mama alone."[6]

Under the circumstances, we are convinced that justice was done, and that the appellant received the punishment he deserved. *Healy*, 26 M.J. at 395. Granting relief at this point would be to engage in clemency, a prerogative reserved for the convening authority, and we decline to do so. *See id.* at 395-96.

## CONCLUSION

We conclude that the findings and sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ. The findings and sentence are affirmed.

For the Court

R.H. TROIDL
Clerk of Court

---

[5] *Id.* at 549.

[6] *Id.*