*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GASTON, HOUTZ, and MYERS
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Colton N. EVANS**
Private (E-1), U.S. Marine Corps
*Appellant*

**No. 202100002**

_____

Decided: 7 July 2022

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Michael D. Libretto (arraignment and motions)
Glen R. Hines (trial)

Sentence adjudged 7 August 2020 by a general court-martial convened at Marine Corps Recruit Depot Parris Island, South Carolina, composed of officer and enlisted members. Sentence in the Entry of Judgment: confinement for five years and a dishonorable discharge.

For Appellant:
*Lieutenant Megan E. Horst, JAGC, USN*

For Appellee:
*Lieutenant John L. Flynn, IV, JAGC, USN*
*Major Kerry E. Friedewald, USMC*

Judge MYERS delivered the opinion of the Court, in which Senior Judge GASTON and Judge HOUTZ joined.

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

MYERS, Judge:

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of wrongful drug use, rape, and disorderly conduct, in violation of Articles 112a, 120, and 134, Uniform Code of Military Justice [UCMJ].[1]

Appellant asserts three assignments of error: (1) the Government presented legally and factually insufficient evidence to support a finding of guilty for rape; (2) the military judge erred in not instructing the members on the definition of "force;" and (3) Appellant's trial defense counsel were ineffective for failing to request an instruction on the definition of "force." We find no prejudicial error and affirm.

## I. BACKGROUND

On a Friday evening in October 2018, Hull Maintenance Technician Fireman (E-3) [HTFN] Violet[2] attended a party that Appellant also attended. As the evening concluded, HTFN Violet and Appellant agreed to return to HTFN Violet's barracks room to engage in sexual intercourse. The two had engaged in consensual vaginal intercourse on another occasion several weeks prior. HTFN Violet testified that during their first sexual encounter she told Appellant that she was not interested in anal sex, and that she reasserted that to Appellant on this night.

They were again engaging in consensual vaginal intercourse on this night when Appellant inserted his penis into HTFN Violet's anus. She told him to

---

[1] 10 U.S.C. §§ 912a (2018) [UCMJ (2018)], and 10 U.S.C. § 920 and 934 (Supp. V 2012) [UCMJ (Supp. V 2012)].

[2] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms. Military members' ranks are the ranks at the time of the offenses.

stop several times, reiterating that she didn't want to do "that," but he continued. He held her left forearm with his left hand, then moved his right hand to the back of her head and forced her head down, all while continuing to penetrate her anally. She attempted to push him off of her, but was unable to do so.

Appellant finally stopped when HTFN Violet's neighbor, Hull Maintenance Technician Second Class (E-5) [HT2] Juliett, started banging on HTFN Violet's door. HTFN Violet then dressed herself and went to the door while Appellant went into the wardrobe to hide.

Earlier in the evening, HT2 Juliett had heard HTFN Violet and a guest walk into HTFN Violet's room and begin engaging in sexual intercourse.[3] As HT2 Juliett watched television with her friend, Yeoman Third Class (E-4) [YN3] Papa, she heard a noise from HTFN Violet's room that sounded like "no."[4] She was not initially sure about the noise because her television was intentionally turned up loud enough to cover the sounds coming from the neighboring room, so she paused her television so that she could hear better. She then heard another "no," followed later by a "no, stop, get off me,"[5] which she described as "really emotional."[6]

After she heard HTFN Violet say "no" at least three times, HT2 Juliett walked over to HTFN Violet's door and began pounding on it. She heard shuffling in the room, then heard HTFN Violet's wardrobe opening and closing, after which HTFN Violet opened her door. After making general inquiries, HT2 Juliett pushed her way into HTFN Violet's room and opened the wardrobe door, where she found Appellant, wearing only jeans, hiding underneath the clothes. HT2 Juliett told Appellant to get out, and gave him a few minutes to get dressed and leave. He then asked her if she would like to see his penis and when she said no, he closed HTFN Violet's door, excluding HT2 Juliett from HTFN Violet's room. HT2 Juliett then heard Appellant tell HTFN Violet, "I'm not f***ing done," and "get over here."[7] In response, HTFN Violet said, "I don't want to do this anymore. Get out of my room. Leave."[8]

---

[3] The barracks rooms shared an air duct, which permitted people to hear what was going on in adjoining rooms, to include sexual activity.

[4] R. at 549.

[5] *Id.* at 552.

[6] *Id.* at 554.

[7] *Id.* at 563.

[8] *Id.* at 563.

Hearing this, HT2 Juliett again knocked on HTFN Violet's door, this time with YN3 Papa behind her. YN3 Papa told Appellant that it was time for him to leave, and Appellant responded by telling YN3 Papa to mind his own business. After a short exchange, Appellant invited YN3 Papa outside the room to fight. When Appellant left the room, YN3 Papa closed the door behind Appellant, locking him out.

Duty rovers[9] were notified. As they discussed what happened with HT2 Juliett and YN3 Papa, Appellant approached them, looking for his cellphone. When asked what happened, Appellant said that he was having consensual vaginal intercourse with HTFN Violet, that then they both agreed to engage in anal intercourse, and that when she asked him to stop, he did. Appellant was disrespectful, belligerent, and aggressive toward the two duty rovers, and falsely told them he was a sergeant (E-5) in the Marine Corps. After one of the duty rovers ordered Appellant to remain outside with the second duty rover while he spoke with HTFN Violet inside her barracks room, Appellant fled the area. When the duty rover entered HTFN Violet's barracks room to speak to her, she was distraught and crying.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant asserts that the evidence is legally and factually insufficient to support his rape conviction under Article 120, UCMJ. We review legal and factual sufficiency de novo.[10]

In determining legal sufficiency, we must ask ourselves if, "considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."[11] In doing so, we "draw every reasonable inference from the evidence of record in

---

[9] On this base and in this instance, duty rovers were Sailors who roamed the barracks to ensure the safety of its Sailors.

[10] Article 66(d), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[11] *United States v. Turner*, 25 M.J. 324, 324-25 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

favor of the prosecution."[12] "[T]he standard for legal sufficiency involves a very low threshold to sustain a conviction."[13]

In determining factual sufficiency, we must be convinced of an appellant's guilt beyond a reasonable doubt after weighing the evidence in the record of trial and making allowances for not having observed the witnesses.[14] We do not presume either innocence or guilt, and instead take "a fresh, impartial look at the evidence" to independently determine whether each element has been satisfied with proof beyond a reasonable doubt.[15] Proof beyond a "[r]easonable doubt, however, does not mean the evidence must be free from conflict."[16]

In order to sustain Appellant's conviction for rape as charged, the Government must have proven beyond a reasonable doubt (1) that Appellant committed a sexual act upon HTFN Violet by causing penetration, however slight, of HTFN Violet's anus by Appellant's penis; and (2) that Appellant did so by using unlawful force against HTFN Violet. Unlawful force means "an act of force done without legal justification or excuse."[17] "Force" is defined as "(A) the use of a weapon; (B) the use of such physical strength or violence as is sufficient to overcome, restrain, or injure a person; or (C) inflicting physical harm sufficient to coerce or compel submission by the victim."[18]

Appellant argues that his convictions are legally and factually insufficient for three reasons: (1) The government failed to prove "unlawful force" beyond a reasonable doubt; (2) HTFN Violet's allegation did not rise to the level of unlawful force; and (3) HTFN Violet did not allege force sufficient to overcome the resistance, restrain, or injure her. He further argues that HTFN Violet was an unreliable witness, was "thoroughly impeached,"[19] and had a motive to lie. We disagree with these assertions.

First, we find HTFN Violet's trial testimony both compelling and corroborated. HTFN Violet testified:

---

[12] *United States v. Gutierrez*, 74 M.J. 61, 65 (C.A.A.F. 2015).

[13] *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019).

[14] *Turner*, 25 M.J. at 325.

[15] *Washington*, 57 M.J. at 399.

[16] *United States v. Rankin,* 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006).

[17] Article 120(g)(6), UCMJ (Supp. V 2012).

[18] Article 120(g)(5), UCMJ (Supp. V 2012).

[19] Appellant's Br. at 35.

> [He] took [his penis] out and then it had gone into my anus and as soon as I felt that I had said, "Stop, I don't want to do that." He didn't stop. Just kept going and I kept asking him to stop and I kept saying "no" and "no" and I didn't hear a response. And at that point, I was trying to push him off with my right hand because he had his hand on my left arm and his other hand on the back of my head. I just kept saying, "no, no" and then when it finally stopped it was because my roommate banged on the door.[20]

HT2 Juliett and YN3 Papa testified to hearing HTFN Violet's declarations of "No, stop. I don't want to do that"[21] and "No, stop, get off me."[22] YN3 Papa heard HTFN Violet continue to say "stop," which was followed by "no, shut up" and Appellant's admonitions to "be quiet."[23]

Second, we find sufficient evidence to prove beyond a reasonable doubt that Appellant used unlawful force, which includes the use of such physical strength as is sufficient to overcome, restrain, or injure a person. HTFN Violet testified that she tried to push Appellant off of her, but because he was holding her down, she was unsuccessful. A forensic examination conducted several days later revealed bruises on her left arm and buttock, tenderness on the back of her head, and soreness in her anal area, which had micro-tears consistent with penile penetration.

Third, Appellant's statements support HTFN Violet's testimony about the force he used while he was anally penetrating her. In addition to the statements overheard by HT2 Juliett and YN3 Papa next door, a Government witness testified that Appellant later told him that "[Appellant] was f***ing a b*** and it slipped in her a***, and she tried to call rape."[24] Appellant then told the witness, "I like my women with a little bit of scream."[25]

Fourth, we do not find compelling the testimony of the witnesses the Defense called to counter HTFN Violet's assertions. Two testified that Appellant and HTFN Violet flirted at the party earlier in the evening; however, these witnesses could not illuminate the events that occurred in HTFN Violet's room later that night. Another witness, Seaman (E-3) [SN] Sierra, testified that

---

[20] R. at 609.

[21] *Id.* at 497.

[22] *Id.* at 552.

[23] *Id.* at 497, 499, 501.

[24] *Id.* at 847.

[25] Official Audio R. of Mr. Delta at 05:25-05:28 (Aug. 5, 2020).

HTFN Violet told her that she enjoyed anal sex and had "toys" for such purpose; that when she engaged in it with Appellant on the night in question, he stopped when she told him to; and that she wanted to go back to California to be closer to her family. We find SN Sierra's testimony inconsistent, biased toward Appellant, and contradicted by the percipient witnesses, HT2 Juliett and YN3 Papa, who heard HTFN Violet tell Appellant to stop several times and then heard Appellant state that he was not done yet. We also find it telling that SN Sierra testified that HTFN Violet was untruthful, yet was unable to provide any examples of HTFN Violet's untruthfulness.

Finally, we are unpersuaded that HTFN Violet reported what had been a consensual act as rape because she was seeking a way out of the barracks or looking for a way to transfer to a different duty station in a different state. Appellant's main argument at trial in this regard was that HTFN Violet fabricated the allegation so that she could request an expedited transfer from her command. However, this theory was refuted at trial when it became clear that HTFN Violet requested an expedited transfer three to four months after the night in question, and only after receiving threatening messages from someone she believed to be a friend of Appellant.[26] While it is true that HTFN Violet was moved out of the barracks as a result of her allegations against Appellant, this possible ulterior motive does not repudiate the evidence supporting Appellant's conviction, namely, the percipient witnesses and Appellant's own statements.

Considering the evidence in the light most favorable to the Prosecution, we find a reasonable fact finder could have found all the essential elements beyond a reasonable doubt. After weighing the evidence and making allowances for not having observed the witnesses, and recognizing that the evidence need not be free from conflict, we, too, are convinced of Appellant's guilt beyond a reasonable doubt.

## B. Waiver of Instructional Error

Appellant asserts the military judge erred in not instructing the members on the statutory definition of "force." We find that he waived this issue at trial.

"Whether an appellant has waived an issue is a legal question that this Court reviews de novo. Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional

---

[26] She testified that although she did not know where she would be stationed, she believed anywhere would be safer than where she was.

relinquishment or abandonment of a known right."[27] In *United States v. Davis*, the military judge had a preliminary discussion with the parties regarding the findings instructions he intended to give. He asked whether there were any objections or requests for additional instructions, to which the trial defense counsel responded, "No changes, sir."[28] Subsequently, after granting a finding of not guilty to one of the specifications and marking the instructions as an appellate exhibit, the military judge again asked if there were any objections to the findings instructions, to which the trial defense counsel responded, "No, Your Honor."[29] The military judge then provided the instructions to the members.

When the appellant claimed error on appeal regarding the military judge's instruction on an element of one of the offenses, the court in *Davis* found that:

> Appellant did not just fail to object and thereby merely forfeit[] his claim. He affirmatively declined to object to the military judge's instructions and offered no additional instructions. By expressly and unequivocally acquiescing to the military judge's instructions, Appellant waived all objections to the instructions, including in regards to the elements of the offense.

*Id.* at 331 (citations and internal quotation marks omitted). Having found the appellant affirmatively waived any objection to the findings instructions, the court determined it had "nothing left . . . to correct on appeal" and declined to address his assertion of legal error regarding the instructions.[30]

In the present case, the military judge had a detailed discussion with trial and defense counsel regarding his proposed instructions. The defense counsel fought to persuade the military judge to instruct on mistake of fact as to consent and not to instruct on any lesser-included sexual offenses, arguing that with respect to "the allegation of rape by unlawful force . . . because the government has alleged that type of force and if they have not proven that type of force, they can't switch to another type of force."[31] When the military acceded to the Defense's position on the issue in his draft instructions, upon reviewing them Appellant's individual military counsel stated that the "defense concurs

---

[27] *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (citation and internal quotation marks omitted).

[28] *Id.* at 330.

[29] *Id.*

[30] *Id.* at 331-32.

[31] R. at 1192.

with the current version of the instructions."[32] Subsequently, after reading the instructions to the members, the military judge asked, "do the counsel object to the instructions given or request additional instructions that we haven't already discussed on the record?" The defense counsel replied, "No, your honor."[33]

We find Appellant's assertion of instructional error is waived under *Davis*. The factual scenario presented here is even more compelling than in *Davis*, where the trial defense merely affirmatively declined to object to the court's instructions. Here, after a substantial colloquy, Appellant's trial defense counsel both affirmatively concurred with and affirmatively declined to object to the military judge's instructions and offered no additional instructions on two separate occasions. Through this repeated concurrence and declination to object, Appellant expressly and unequivocally acquiesced to the military judge's instructions. When an appellant "intentionally waives a known right at trial, it is extinguished and may not be raised on appeal."[34]

## C. Ineffective Assistance of Counsel

We review claims of ineffective assistance of counsel de novo.[35]

The Sixth Amendment guarantees the accused the right to effective assistance of counsel.[36] In assessing the effectiveness of counsel, we apply the standards set forth in *Strickland v. Washington*,[37] and presume competence as announced in *United States v. Cronic*.[38] "[O]ur scrutiny of a trial defense counsel's performance is 'highly deferential,' and we make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate conduct from counsel's perspective at the time."[39] Appellant bears the burden of showing (1) that his counsel's perfor-

---

[32] *Id.* at 1200.

[33] *Id.* at 1317.

[34] *United States v. Gladue*, 67 MJ 311, 313 (C.A.A.F. 2009).

[35] *United States v. Harpole*, 77 M.J. 231, 236 (C.A.A.F. 2018).

[36] *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001).

[37] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[38] *United States v. Cronic*, 466 U.S. 648, 658 (1984).

[39] *United States v. Akbar,* 74 M.J. 364, 379 (C.A.A.F. 2015).

mance was deficient; and (2) that this deficient performance prejudiced the defense.[40] "It is not enough to show that the errors had some conceivable effect on the outcome," there must be a "probability sufficient to undermine confidence in the outcome," including "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."[41]

Appellant asserts his defense counsel were ineffective in failing to request an instruction on the statutory definition of "force." As discussed above, we have concluded that in affirmatively concurring and declining to object or request additional instructions, Appellant's trial defense counsel expressly and unequivocally acquiesced to the military judge's instructions, which waived this issue. Under such circumstances, the Supreme Court has found that "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve."[42]

While there is some inconsistency among the affidavits from Appellant's three defense counsel, the failure of the Defense team to ensure that the military judge provided an instruction on "force" appears to have been an oversight, as opposed to a deliberate intention to allow members to deliberate without that definition. Considering that one of the principal issues before the court on the rape charge was whether Appellant used unlawful force, a definition of "force" would generally assist the Defense in making the argument that this element was not proven beyond a reasonable doubt. We would therefore generally expect the defense counsel to have reviewed the instructions and ensured that the members were provided with that definition.[43]

However, even assuming, without deciding, that Appellant's counsel were deficient in this apparent oversight, we find no prejudice. Based on the strength of the evidence adduced at trial, we do not believe an instruction on

---

[40] *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

[41] *Datavs*, 71 M.J. at 424.

[42] *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland*, 466 U.S. at 689-90).

[43] Nor were the defense counsel alone responsible for this oversight; the military judge and trial counsel should also have ensured the members were appropriately instructed, which generally requires that all the elements and pertinent definitions are provided. *See* R.C.M. 920(e).

the definition of "force" would have swayed the members' findings, such that the result of the proceeding would have been different. To the contrary, as discussed in Section II.A. above, the evidence would still have strongly supported a guilty finding. The members heard from both trial and defense counsel that force required physical restraint, and heard the trial counsel's correct summary of how the facts of the case satisfied the force requirement. Given the weight of the evidence in this case, as explored more fully above, we do not find a probability sufficient to undermine confidence in the outcome.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[44] The findings and sentence are **AFFIRMED**.

Senior Judge GASTON and Judge HOUTZ concur.

FOR THE COURT:

S. TAYLOR JOHNSTON
Acting Clerk of Court

---

[44] Articles 59 & 66, UCMJ.