# United States Navy-Marine Corps Court of Criminal Appeals

Before
GASTON, STEWART, and BAKER
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Maurice J. LEWIS**
Sergeant (E-5), U.S. Marine Corps
Appellant

**No. 201900048**

Decided: 17 August 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
John L. Ferriter (arraignment)
Jeffrey V. Munoz (trial)

Sentence adjudged 12 October 2018 by a general court-martial convened at Marine Corps Air Station Yuma, Arizona, consisting of officer and enlisted members. Sentence approved by the convening authority: dishonorable discharge.

For Appellant:
*Lieutenant Commander William L. Geraty, JAGC, USN*

For Appellee:
*Major Kyle D. Meeder, USMC*
*Lieutenant Kimberly Rios, JAGC, USN*

Judge BAKER delivered the opinion of the Court, in which Senior Judge GASTON and Judge STEWART joined.

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under NMCCA
Rule of Appellate Procedure 30.2.**

_____

BAKER, Judge:

Appellant was convicted, contrary to his pleas, of three specifications of failure to obey a lawful order or regulation for fraternization and wrongfully providing alcohol to a person under the age of 21, one specification of sexual assault by causing bodily harm, one specification of indecent viewing, and one specification of assault consummated by a battery in violation of Articles 92, 120, 120c, and 128, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 892, 920, 920c, 928 (2012).[1] He asserts that the evidence is legally and factually insufficient to support his convictions for assault consummated by a battery, sexual assault, and indecent viewing.

We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant worked with the victim, Corporal [Cpl] "Harris,"[2] from at least November 2015 through the summer of 2016. At the time they met, Cpl Harris was a Lance Corporal and Appellant was a Sergeant.[3] While working professionally with Cpl Harris, Appellant socialized with him at non-command events and invited Cpl Harris to meet up with him off-duty, including to consume alcohol together.

In November 2015 Cpl Harris, who was then underage, asked Appellant to purchase alcohol for him.[4] After purchasing and providing the alcohol to Cpl Harris, Appellant joined Cpl Harris and others in a barracks room where

---

[1] Appellant was acquitted of an additional specification charging him with unlawfully committing a sexual act when he knew or reasonably should have known the victim was asleep, in violation of Article 120, UCMJ, 10 U.S.C. § 920 (2012).

[2] The names used in this opinion are pseudonyms.

[3] Cpl Harris has since separated from the Marine Corps.

[4] Cpl Harris turned 21 in July 2016. R at 546.

Marines were playing a videogame. Cpl Harris became tired and went back to his barracks room to take a shower. As he typically did, he left the door to his room bolted open so that friends could come and go from the room. He had no plans to see Appellant again that night and did not invite Appellant to come to his room.

While Cpl Harris was taking a shower, Appellant entered his room. Appellant then entered the bathroom and began pulling open the shower curtain, startling Cpl Harris, who stopped the curtain from being opened fully. Appellant asked permission to join Cpl Harris in the shower. Cpl Harris testified he could see Appellant's body, and that from where Appellant was positioned it was possible for Appellant to see Cpl Harris's naked body, including his buttocks. He asked Appellant to leave, and Appellant left the bathroom.

During March 2016, Appellant was diagnosed with human immunodeficiency virus [HIV]. He responded well to treatment, and by mid-May Appellant's viral load tested at an undetectable level (albeit not zero). Near in time to his diagnosis, he was informed by medical personnel that prior to engaging in any sexual acts, he was required to verbally advise any prospective sexual partner that he was HIV-positive. Covered sexual acts would include acts involving Appellant's mouth and a bare penis. He was also presented with a document entitled, "HIV Evaluation Treatment Unit Counseling Statement."[5] Because of Appellant's HIV-positive status, this document advised him, in pertinent part, that

> prior to engaging in sexual activity in which my bodily fluids may be transmitted to another person, I must verbally advise any prospective sexual partner that I am HIV positive and that there is a risk of infection. If my partner consents to sexual relations, I shall not engage in sexual activities without the use of a condom.[6]

Thus, regardless of how low his viral load was, Appellant was advised he must inform prospective sexual partners of his HIV status prior to engaging in a sex act. While oral sex is a covered sex act, it is generally considered a low-risk sexual activity for transmission of HIV, largely because HIV is not found in saliva; however, if there is a lesion or other manner whereby blood

---

[5] Pros. Ex. 12.

[6] *Id.*

could be introduced into saliva, then there would be a risk of conveying the virus to an uninfected sexual partner.

In late-May or early-June 2016, Cpl Harris and Appellant were at a party together at an off-base residence where they had been drinking alcohol late into the night. Cpl Harris fell asleep on a couch; Appellant was next to him while he fell asleep. When Cpl Harris fell asleep, he had his jeans on. He awoke to find his jeans had been pulled down and were around his ankles, and Appellant's head was between his legs and his penis was in Appellant's mouth. Cpl Harris reported yelling, "Get off. What are you doing?"[7] Appellant ceased, and Cpl Harris got up, pulled up his pants, and left the residence.

In August 2016, Cpl Harris made a restricted report regarding the incident; he conveyed that he made the report not to involve law enforcement but in an effort to seek help, such as the opportunity to see a counselor. However, he had also disclosed the information to a friend; that friend, in turn, conveyed Cpl Harris's allegations to the Naval Criminal Investigative Service [NCIS], which opened an investigation. When interrogated by NCIS, Appellant denied any consensual sexual activity with Cpl Harris. At trial, Cpl Harris testified that he did not consent to Appellant placing his penis in Appellant's mouth; that he did not allow Appellant to do it; that he would not have consented; and that there was no amount of alcohol that would have made him consent to allowing Appellant to perform oral sex on him. Cpl Harris testified that he was first informed of Appellant's HIV status by his Victims' Legal Counsel after the investigation into Appellant's actions began. Cpl Harris added that had he known Appellant was positive for HIV, that would have made his denial of consent "absolute."[8]

## II. DISCUSSION

Appellant asserts the evidence is legally and factually insufficient to support three of his convictions. We review such questions de novo. UCMJ art. 66(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). To determine legal sufficiency, we ask whether, "considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324-25 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In conducting this analysis, we must "draw every

---

[7] R. at 561.

[8] R. at 565.

reasonable inference from the evidence of record in favor of the prosecution." *United States v. Gutierrez*, 74 M.J. 61, 65 (C.A.A.F. 2015).

In evaluating factual sufficiency, we determine whether, after weighing the evidence in the record of trial and making allowances for not having observed the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325 (C.M.A. 1987). In conducting this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. Proof beyond a "[r]easonable doubt, however, does not mean the evidence must be free from conflict." *United States v. Rankin,* 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006).

**A. Legal and Factual Sufficiency of Assault Consummated by a Battery**

In the Specification of Charge IV, Appellant was convicted of assault consummated by a battery. In order to prove this offense, the Government was required to prove that (1) Appellant did bodily harm to Cpl Harris; and (2) the bodily harm was done with unlawful force or violence. *See* UCMJ art. 128(b)(2). "Bodily harm" is defined by the *Manual for Courts-Martial, United States* (2016 ed.) [*MCM*] to mean "any offensive touching of another, however slight." *MCM*, pt. IV, ¶ 54.c.(1)(a). As charged, the bodily harm alleged in the second element is Appellant's touching of Cpl Harris's penis with his mouth while knowingly being HIV-positive, without disclosing such status to Cpl Harris.

Appellant argues his failure to disclose his HIV status does not prove that a nonconsensual sexual act or an assault consummated by a battery occurred. His argument centers on the fact that his viral load had dropped to an undetectable level, as demonstrated by a test conducted on 13 May 2016, just prior to committing the sexual act upon Cpl Harris.

"Consent" is defined as "a freely given agreement to the conduct at issue by a competent person." *United States v. Forbes*, 78 M.J. 279, 281 (C.A.A.F. 2019) (quoting *MCM*, pt. IV, ¶ 45.a.(g)(8)(A)). In *Gutierrez*, the appellant failed to disclose his HIV-positive status to sexual partners and was convicted of aggravated assault. 74 M.J. at 64-67. The Court of Appeals for the Armed Forces [CAAF] reversed his conviction for aggravated assault, concluding the appellant's conduct was not likely to cause death or grievous bodily harm where the risk of HIV transmission was estimated to be a 1-in-500 occurrence for unprotected vaginal sex and "almost zero" for unprotected oral sex. *Id.* at 66-67. However, the court determined that Gutierrez was guilty of the lesser

included offense of assault consummated by a battery, because by failing to disclose his HIV status, "Appellant's conduct included an offensive touching to which his sexual partner[ ] did not provide meaningful informed consent." *Id.* at 68 (citing *R. v. Cuerrier,* [1998] 2 S.C.R. 371, 372 (Can.) ("Without disclosure of HIV status there cannot be true consent.")).

CAAF subsequently extended this reasoning to support a conviction for sexual assault by a nonconsensual sexual act, stating it has "long held . . . that failure to disclose one's HIV-positive status before engaging in sexual activity constitutes an offensive touching. . . ." *Forbes*, 78 M.J. at 281 (citing *United States v. Joseph*, 37 M.J. 392, 395 (C.M.A. 1993)) (concluding consistent with Article 120(b)(1)(B), UCMJ, that the appellant committed a sexual assault each time he had sexual intercourse with one of the victims without first informing her of his HIV status and thereby lawfully obtaining her consent to the intercourse).

Appellant learned that he was HIV-positive in March 2016. By the middle of May 2016, his viral load was undetectable. Subsequently, between late-May and early-June of that same year, Appellant placed Cpl Harris's penis in his mouth without first advising him of his HIV status. Thus, it is uncontested that Appellant knew he was diagnosed HIV-positive prior to the occurrence of the sexual act in question and failed to disclose his HIV status to Cpl Harris prior to engaging in that sexual act. He was charged with a violation of Article 128, UCMJ, for an offensive touching in that he did not disclose his HIV status to Cpl Harris prior to engaging in the sexual act, which per *Gutierrez* and *Forbes* constitutes an offensive touching.

Appellant invites us to consider the likelihood of transmission of HIV as an additional element to the charged misconduct. We decline this invitation, which would require us to depart from binding precedent by our superior court. *See United States v. Andrews*, 77 M.J. 393, 399 (C.A.A.F. 2018) (quoting *United States v. Quick*, 74 M.J. 332, 343 (C.A.A.F. 2015)) (stating the well-settled principle of vertical *stare decisis* that "courts 'must strictly follow the decisions handed down by higher courts'"). While we recognize that the improvement of treatment regimens over the years has steadily lowered the risk of transmission for those who are HIV-positive, it is the prerogative of our superior court, not this one, to determine whether this presents a "significant change in circumstances" warranting a departure from its prior precedents. *See Andrews*, 77 M.J. at 399; *United States v. Davis*, 76 M.J. 224, 228 n.2 (C.A.A.F. 2017) ("It is this Court's prerogative to overrule its own decisions.").

Nor do we find this case distinguishable from *Gutierrez*. In making his argument, Appellant cites to *R. v. Cuerrier*, a decision of the Supreme Court

of Canada (which in turn was cited by CAAF in *Gutierrez*), wherein the court stated:

> Without disclosure of HIV status there cannot be a true consent. The consent cannot simply be to have sexual intercourse. Rather, it must be consent to have intercourse with a partner who is HIV-positive. *The extent of the duty to disclose will increase with the risks attendant upon the act of intercourse.* The failure to disclose HIV-positive status can lead to a devastating illness with fatal consequences and, in those circumstances, there exists a positive duty to disclose.

*Cuerrier*, 2 S.C.R. at 371 (emphasis added). Appellant argues that if there is no risk of transmission (due to both an undetectable viral load and a sexual act with virtually no risk of transmission), then there is no lack of meaningful informed consent. However, in *Gutierrez*, as here, the charges encompassed unprotected oral sex, for which, as here, the risk of HIV transmission was determined to be "almost zero." *Gutierrez*, 74 M.J. at 64. Despite the virtually zero risk of transmission, our superior court plainly held that this conduct constituted "an offensive touching to which [Gutierrez's] sexual partners did not provide meaningful informed consent," and affirmed his conviction for assault consummated by a battery. *Id.* at 68.

Thus, we echo the conclusion of the Supreme Court of Canada, that without disclosure of HIV status, there cannot be true consent. Following the binding holding of *Gutierrez*, we conclude that however low the risk of HIV transmission may have been, Appellant was diagnosed with HIV prior to the act, was advised to inform prospective sexual partners of his HIV status, and failed to so inform Cpl Harris prior to engaging in unprotected oral sex; thus, his conduct was "an offensive touching of another, however slight . . . to which [Cpl Harris] did not provide meaningful informed consent." *Gutierrez*, 74 M.J. at 68. Appellant's conduct therefore satisfies both elements of Article 128 (b)(2), UCMJ.

Considering the evidence in a light most favorable to the Prosecution, we conclude that a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt. The evidence is thus legally sufficient to support the conviction. Regarding factual sufficiency, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt.

## B. Legal and Factual Sufficiency of Sexual Assault by Bodily Harm

In Specification 1 of Charge II, Appellant was convicted of committing a sexual act upon Cpl Harris by causing penetration of Appellant's mouth with

7

Cpl Harris's penis without his consent. In order to prove this offense, the Government was required to prove that (1) Appellant caused penetration of his mouth with Cpl Harris's penis; and (2) Appellant did so by causing bodily harm to Cpl Harris. UCMJ art. 120(b)(1)(B).

"Bodily harm" in the context of Article 120, UCMJ, means "any offensive touching of another, however slight, including any nonconsensual sexual act." UCMJ art. 120(g)(3). Consent is defined as "a freely given agreement to the conduct at issue by a competent person." UCMJ art. 120(g)(8)(A). "Lack of consent may be inferred based on the circumstances of the offense." UCMJ art. 120(g)(8)(C).

Appellant challenges the legal and factual sufficiency of his conviction, arguing that the only evidence presented at trial to prove a lack of consent was the testimony of Cpl Harris. Cpl Harris testified he had fallen asleep on a couch after a house party, and awoke to find his penis in Appellant's mouth. He exclaimed, "Get off. What are you doing?"[9] A few months later, he filed a restricted report. Cpl Harris made clear that he did not consent to the sex act in question, and that he found the nonconsensual act to be an offensive touching. He added that had he known Appellant was positive for HIV, that would have made his denial of consent "absolute."[10]

Appellant argues that because the members specifically acquitted him of committing this sexual act when he knew or reasonably should have known Cpl Harris was asleep, they "rejected [Cpl Harris's] factual narrative of the sexual encounter . . . ."[11] If this factual narrative was rejected, Appellant suggests, the Government is left with only an "*ex post facto*" argument that Cpl Harris did not consent to the sexual act at issue.[12] However, Appellant's acquittal of the other specification does not necessarily imply that the members rejected a narrative that Cpl Harris was *in fact* asleep at the time of the sexual act. That specification required that the Government demonstrate Appellant *knew or reasonably should have known* that Appellant was asleep at the time of the act. Thus, it is possible that the members believed Cpl Harris was asleep at the time of the sexual act, but were not convinced beyond a reasonable doubt that Appellant knew, or should have known, that this was the case. Accordingly, Appellant's acquittal of that specification is

---

[9] R. at 561.

[10] R. at 565.

[11] App. Reply Br. at 2.

[12] *Id.* at 3.

not necessarily inconsistent with his conviction on Specification 1 of Charge II.[13]

Regardless of any theory of liability based on Cpl Harris being asleep, the elements of sexual assault by causing bodily harm only require that we be convinced beyond a reasonable doubt that Cpl Harris did not consent to the sexual act at issue. At trial, the Government's theory of liability as to Specification 1 of Charge II included both a general lack of consent and a lack of informed consent, in that Appellant committed a sexual act upon Cpl Harris without informing him of his HIV status.[14] Of course, we do not know with precision on which lack-of-consent theory the members convicted, as the panel properly returned a general verdict without specifying the particular theory of liability on which the conviction was based. *See United States v. Brown*, 65 M.J. 356, 359 (C.A.A.F. 2007) (citation omitted). Nevertheless, so long as the evidence supports one of the potential theories of liability beyond a reasonable doubt, a conviction will stand, even where the panel itself may not agree on a single means of commission. *Id.* (citing *Schad v. Arizona*, 501 U.S. 624, 631 (1991) (plurality opinion)).

Regardless of which theory the members may have used to convict, we are convinced beyond a reasonable doubt that Appellant committed the sexual act without Cpl Harris's consent. Cpl Harris gave compelling testimony that he woke up on the morning of the sexual act to find his jeans around his ankles, and his penis in Appellant's mouth. He immediately expressed his shock and left the premises. He later reported the incident as a sexual assault, and testified that following the incident he began to abuse alcohol in an effort to cope with the experience. Given Cpl Harris' testimony, and the generally corroborative evidence presented at trial, we are convinced that the sexual act was nonconsensual. We are equally convinced that Appellant committed the sexual act without Cpl Harris's consent based on Appellant's failure to inform Cpl Harris of his HIV status prior to commission of the sexual act, after Appellant had been made aware that he was HIV-positive and was advised to inform prospective sexual partners of his HIV status.

---

[13] Even if a genuine inconsistency existed, it would provide no relief. *United States v. Powell*, 469 U.S. 57, 63-68 (1984) (in part because inconsistent verdicts may be the result of lenity, and the fact that the Government is unable to invoke review, inconsistent verdicts are not generally reviewable); *see also United States v. Hutchins*, 78 M.J. 437, 445 (C.A.A.F. 2019) (inconsistent verdicts prevent the identification of any issue of ultimate fact, and thus deprive acquittals of any preclusive effect).

[14] R. at 974; App. Ex. XVII at 22.

Thus, for the reasons discussed above, Appellant's commission of the sexual act was "an offensive touching to which [Cpl Harris] did not provide meaningful informed consent." *Gutierrez*, 74 M.J. at 68; *Forbes*, 79 M.J. at 281 ("[I]t is the failure to inform the victim[] of the HIV-positive status that vitiates meaningful consent and causes the touching to be offensive.") Appellant's conduct therefore satisfies each element of Article 120(b)(1)(B), UCMJ.[15]

Considering the evidence in a light most favorable to the Prosecution, we conclude that a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt. The evidence is thus legally sufficient to support the conviction. Regarding factual sufficiency, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt.

## C. Legal and Factual Sufficiency for Indecent Viewing

Appellant was convicted of indecent viewing of the private area of Cpl Harris without his consent while he was in his own shower. In order to prove the act of unlawfully viewing a private area of another, the Government was required to prove that Appellant (1) knowingly and wrongfully viewed the private area of Cpl Harris, (2) that such viewing occurred without

---

[15] We have considered whether the mere possibility that the members convicted based on a "failure to inform" theory renders Specification 1 of Charge II multiplicious or unreasonably multiplied vis-à-vis the assault consummated by a battery specification under Charge IV. *See generally United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001) (explaining the distinct doctrines of multiplicity and unreasonable multiplication of charges). We conclude it does not. First, the Charge IV specification directly charged Appellant with failing to inform Mr. Harris of his HIV status and thus facially requires proof of an element that the other specification, charging Appellant with committing a nonconsensual sexual act, does not; hence, the specifications are not multiplicious. *See United States v. Armstrong*, 77 M.J. 465, 469-70 (C.A.A.F. 2018) (explaining two tests for assessing multiplicity, the first based both on the statutory elements, and the second based on the elements as charged). Second, we agree with the trial judge's conclusion that the *Quiroz* factors weigh against finding an *unreasonable* multiplication of charges in this instance, given our conclusion that the evidence supports a lack of consent for the sexual act that is distinctly separate from Appellant's non-disclosure of his HIV status. *See generally United States v. Rodriguez*, 66 M.J. 201, 204 (C.A.A.F. 2008) (explaining the "longstanding common law rule" on general verdicts that a verdict attaches to all theories charged); *Brown*, 65 M.J. at 359 ("A factfinder may enter a general verdict of guilt even when the charge could have been committed by two or more means, as long as the evidence supports at least one of the means beyond a reasonable doubt.").

the consent of Cpl Harris, and (3) under circumstances in which Cpl Harris had a reasonable expectation of privacy. UCMJ art. 120c(a)(1). "Private area" is defined as including the "naked or underwear-clad genitalia, anus, [and] buttocks." UCMJ art. 120c(d)(2). A "reasonable expectation of privacy" means under "circumstances in which a reasonable person would believe that a private area of the person would not be visible to the public." UCMJ art. 120c(d)(3)(B).

Appellant challenges the legal and factual sufficiency of his conviction, arguing that the only evidence presented at trial by the Government to prove its case was the testimony of Cpl Harris. On the evening in question, Cpl Harris had departed the company of Appellant and others in order to return to his barracks room to shower. Cpl Harris's shower was inside his bathroom, which had a door, and the bathroom, in turn, was inside his barracks room. His barracks room was separated from the hallway by a door. Appellant entered Cpl Harris's barracks room uninvited, then entered the bathroom, and upon entering the bathroom, he acted to open the shower curtain, on the other side of which was Cpl Harris, who was then naked and showering. Appellant's actions of knowingly and wrongfully entering Cpl Harris's barrack's room, his bathroom, and then opening the shower curtain and viewing Cpl Harris all happened without the permission or consent of Cpl Harris.

Cpl Harris testified that when Appellant pulled back the shower curtain, he could see Appellant's body; that Appellant was in a position to see his (Cpl Harris') body, including his exposed private area (specifically, his naked buttocks); and that it was possible Appellant saw his buttocks. Cpl Harris did not invite Appellant to enter his barracks room, nor his bathroom, nor to pull the shower curtain back and view his unclothed buttocks. We find that Appellant did so, and further find that Cpl Harris had a reasonable expectation of privacy in his own shower, which was located inside his own private residence. Consequently, the evidence in the record satisfies each element of Article 120c(a)(1), UCMJ.

Considering the evidence in a light most favorable to the Prosecution, we conclude that a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt. The evidence is thus legally sufficient to support the conviction. Regarding factual sufficiency, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred. UCMJ arts. 59, 66. The findings and sentence as approved by the convening authority are **AFFIRMED**.

Senior Judge GASTON and Judge STEWART concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court