*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, DEERWESTER, and HACKEL
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Dexter K. KUNISHIGE**
Sergeant (E-5), U.S. Marine Corps
*Appellant*

**No. 201800110**

Decided: 23 August 2022

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
John P. Norman

Sentence adjudged 17 October 2020 by a general court-martial convened at Marine Corps Base Camp Pendleton, California, consisting of members with enlisted representation. Sentence in the Entry of Judgment: reduction to E-1, forfeiture of all pay and allowances, confinement for 30 years, and a dishonorable discharge.[1]

For Appellant:
*Lieutenant Megan E. Horst, JAGC, USN*

For Appellee:
*Lieutenant R. Blake Royall, JAGC, USN*
*Lieutenant Gregory A. Rustico, JAGC, USN*

_____

[1] Appellant was credited with serving 1,381 days' pretrial confinement.

Senior Judge HOLIFIELD delivered the opinion of the Court, in which Senior Judge DEERWESTER and Judge HACKEL joined.

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————————

HOLIFIELD, Senior Judge:

This case is before us for a second time. In October 2019 we reversed Appellant's September 2017 convictions based on errors related to members selection and authorized a rehearing on the charges and specifications to which Appellant was originally found guilty.[2]

At a rehearing, a panel of members sitting as a general court-martial convicted Appellant, contrary to his pleas, of violating a lawful general order, sexually abusing a child under the age of twelve, sexually assaulting a child under the age of twelve, sexually assaulting a child under the age of sixteen (two specifications), possessing child pornography, soliciting another to produce and distribute child pornography, obstructing justice, and committing adultery, in violation of Articles 92, 120b, and 134, Uniform Code of Military Justice [UCMJ].[3]

Appellant asserts eight assignments of error [AOEs]: (1) that the evidence presented was legally and factually insufficient to prove Appellant sexually abused a child under the age of twelve by committing lewd acts; (2) that the evidence presented was legally and factually insufficient to prove Appellant sexually assaulted a child under the age of twelve by sexual intercourse; (3) that the military judge abused his discretion by denying Appellant's request for an expert consultant in forensic psychology to address an alleged victim's credibility; (4) that the military judge abused his discretion by denying Appellant's request for an expert consultant in forensic psychology to address Appellant's probability of reoffending; (5) that the military judge abused his discretion in admitting evidence seized from Appellant's MacBook laptop computer;

_____

[2] *United States v. Kunishige*, 79 M.J. 693 (N-M. Ct. Crim. App. 2019).

[3] 10 U.S.C. §§ 892, 920b, 934 (2012).

(6) that the Government violated Article 46, UCMJ, by failing to disclose that Appellant's battalion commander had signed a delivery agreement with the State of Nevada to extradite Appellant for prosecution; (7) that Appellant's sentence to 30 years' confinement is inappropriately severe; and (8) that the military judge erred in instructing the members that the maximum term of confinement they could award was life without the possibility of parole.[4]

We find no prejudicial error and affirm.

## I. BACKGROUND

In the summer of 2013, Appellant met Allison Sierra,[5] a classmate and friend of Appellant's stepsister. Allison was then eleven years old. Soon thereafter Appellant began sexually abusing and assaulting Allison, quickly moving from kissing to sexual intercourse over the next month or two. Travelling on weekends from his two-hours-distant duty station, Appellant would arrange to pick up Allison and engage in sex with her in either his car, a local hotel, or at his mother's home. On at least one occasion before Allison's twelfth birthday, Appellant took her to the Las Vegas Luxor Hotel, where they kissed and had intercourse.

Appellant and Allison later repeated the Luxor visit (and sex) to celebrate Allison's twelfth birthday. But, prior to this, Appellant drove his step-sister, her brother, and Allison on a camping trip. That night, Appellant insisted Allison share a tent with him while the others slept in another. Appellant raped Allison in the tent.

In late 2013, Allison's parents discovered a picture of Appellant's penis on Allison's phone. They contacted local police, who interviewed Allison. During this interview Allison denied any romantic or sexual relationship with Appellant. Her denials were in accordance with Appellant's coaching as to what she should say if anyone learned of their relationship.

Over the next roughly two-and-a-half years, Appellant continued to engage in vaginal, anal, and oral sex with Allison. Appellant also requested that Allison send him graphic sexual pictures and videos of herself, which she did. At some point she moved into his home, where Appellant took steps to ensure she

---

[4] This last issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We have reviewed assignments of error (3), (6), and (8) and find them to be without merit. *United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987).

[5] All names in this opinion, other than Appellant, counsel and judges, are pseudonyms.

was isolated from her family and friends. During this time they held themselves out as "boyfriend and girlfriend." Appellant repeatedly urged Allison to find women online to engage in group sex, which she did. On one occasion, when Allison declined to engage in group sex, Appellant punched and choked her before sexually assaulting her.

In May 2016, Appellant married a childhood friend. His new wife moved into the home shared by Appellant, his sister, his sister's boyfriend, and Allison. Appellant referred to Allison as his ex-girlfriend, although the two had sex several times during Appellant's marriage. Sometime later, after Allison had moved out, Appellant engaged in a violent argument with his wife. When she indicated their marriage was finished, Appellant asked his wife to contact Allison to encourage Allison to restart her romantic relationship with Appellant. It was during this conversation that the wife learned that Allison was only fifteen.

Appellant's wife then contacted his command, who issued Appellant a military protective order to have no contact with Allison. Despite this order, Appellant communicated with Allison, telling her to delete any texts she had shared with him. During the ensuring interview with local police, Allison described in detail her years-long abuse by Appellant.

Additional facts necessary to resolve the AOEs are discussed below.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant asserts the evidence is legally and factually insufficient to support his convictions of sexually abusing a child under the age of twelve by committing lewd acts (kissing) and sexually assaulting a child under the age of twelve by sexual intercourse. We review such questions de novo.[6]

To determine legal sufficiency, we ask whether, "considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could

---

[6] Article 66(d)(1), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

have found all the essential elements beyond a reasonable doubt."[7] In conducting this analysis, we must "draw every reasonable inference from the evidence of record in favor of the prosecution."[8]

In evaluating factual sufficiency, we determine "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we] are . . . convinced of [Appellant's] guilt beyond a reasonable doubt."[9] In conducting this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt."[10] Proof beyond a "[r]easonable doubt, however, does not mean the evidence must be free from conflict."[11]

### 1. Sexual Abuse of a Child Under Twelve Years

In order to prove the offense as charged, the Government was required to prove that: (1) Appellant, on divers occasions, committed lewd acts upon Allison by kissing her lips with his own; (2) at the time, Allison had not reached the age of twelve years; and (3) Appellant did so with an intent to arouse and gratify the sexual desires of himself and Allison.[12]

Allison testified that Appellant kissed her on the lips both during a sleepover in the summer of 2013 and at the Luxor Hotel in August 2013. Her testimony describing the two events was corroborated by a witness and hotel records, respectively. Allison did not turn twelve until December 4, 2013.

Appellant points to conflicting statements Allison provided local law enforcement in 2013 in which she denied kissing Appellant. She was also impeached by a previous statement to trial counsel in which she confessed uncertainty about the dates of the kissing at the Luxor Hotel.

---

[7] *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[8] *United States v. Gutierrez*, 74 M.J. 61, 65 (C.A.A.F. 2015) (citation and internal quotation marks omitted).

[9] *Turner*, 25 M.J. at 325.

[10] *Washington*, 57 M.J. at 399.

[11] *United States v. Rankin,* 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006).

[12] Art. 120b, UCMJ (2012).

Despite these inconsistencies, we are convinced that the evidence is sufficient to establish that Appellant kissed Allison on the lips on divers occasions before her twelfth birthday. We also find that Appellant's intent to arouse and gratify his and Allison's sexual desires is apparent from the conduct and circumstances described.[13]

### 2. *Sexual Assault of a Child Under Twelve Years*

We are similarly convinced regarding Appellant's rape of Allison while she was under twelve. In order to prove the offense as charged, the Government was required to prove that: (1) Appellant, on divers occasions, penetrated Allison's vulva with his penis; and (2) at the time, Allison had not reached the age of twelve years.[14]

Allison described having sexual intercourse with Appellant at the Luxor Hotel in August 2013. While the defense attempted to impeach her with her previous statements that the hotel stay occurred after August 2013, hotel records corroborate her instant testimony. She also testified that Appellant penetrated her with his penis during a camping trip while she was still eleven.

After weighing the evidence in the record of trial, and making every reasonable inference in favor of the prosecution, we are satisfied a reasonable factfinder could have found all of the essential elements of each charge and specification beyond a reasonable doubt. Furthermore, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt and find that the evidence is factually sufficient to support Appellant's convictions.

## B. Denial of Expert Consultant

Appellant claims the military judge erred in denying his request for an expert consultant in forensic psychology to address, inter alia, Appellant's likelihood of reoffending. Appellant's trial defense counsel argued that such expert assistance was required to conduct specialized tests and recidivist evaluations, and to assist the defense in interpreting the results.

---

[13] *See United States v. Rodriquez*, 79 M.J. 1 (C.A.A.F. 2019).

[14] Art. 120b, UCMJ (2012).

### 1. *Law and Standard of Review*

When requesting an expert consultant, an accused must show that "the assistance of the expert is necessary for an adequate defense."[15] Thus, an "accused has the burden of establishing that a reasonable probability exists that (1) an expert would be of assistance to the defense and (2) that denial of expert assistance would result in a fundamentally unfair trial."[16] The defense must prevail on both prongs by a "reasonable probability."[17] To meet the first prong, the request "must show (1) why the expert is needed; (2) what the expert will accomplish for the accused; and (3) why the defense would be unable to gather and present the evidence that the expert assistance would be able to develop."[18]

We review a military judge's denial of an expert consultant for an abuse of discretion.[19] The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion—the challenged action must be "arbitrary, fanciful, clearly unreasonable," or "clearly erroneous."[20] "To reverse for 'an abuse of discretion involves far more than a difference in opinion.'"[21]

### 2. *Motion for Expert Consultant and Military Judge's Ruling*

At an Article 39(a), UCMJ, session to address this and other motions, the defense's desired expert, Dr. Bravo, testified regarding the number and types of tests she could conduct to assess Appellant's risk of recidivism. She described one test she uses, STABLE-2007, as involving "13 empirically validated factors, which predict those who offend or reoffend" as to child sexual abuse.[22] She also described her "ethical obligation" to "review all available documents, review the child's forensic interview, collateral context, if available, . . . [and conduct] psychological testing and interviews."[23] In response, trial counsel stated

---

[15] R.C.M. 703(d)(2)(A)(ii).

[16] *United States v. Freeman*, 65 M.J. 451, 458 (C.A.A.F. 2008) (citation omitted).

[17] *United States v. Bresnahan*, 62 M.J. 137, 143 (C.A.A.F. 2005).

[18] *Freeman*, 65 M.J. at 458 (quoting *Bresnahan*, 62 M.J. at 143).

[19] *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citation omitted).

[20] *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997)).

[21] *Bresnahan*, 62 M.J. at 143 (citation and internal punctuation omitted).

[22] R. at 229.

[23] R. at 230.

that the Government would not present expert testimony regarding Appellant's rehabilitative potential or likelihood of reoffending.

In his written ruling denying the expert consultant request, the military judge concluded that the defense had failed to establish that the requested assistance was necessary. Specifically, "no evidence exists to suggest that [Appellant] suffers from a medical or mental condition or diagnosis that requires expert assistance to interpret" or "possesses personality traits or factors that would make a risk assessment necessary."[24] The military judge considered Dr. Bravo's testimony as "speculative and demonstrat[ing] merely a possibility of assistance."[25] He also noted that the defense had not demonstrated it was unable to develop and present the evidence it expected to receive from the expert. Finally, the military judge concluded that denying the expert would not result in a fundamentally unfair trial. He based this last conclusion in part on the Government's assurance that it would neither employ a recidivism expert nor focus its sentencing case on Appellant's likelihood to reoffend.

Later, after resting its case on the merits, the defense renewed its request for Dr. Bravo. Again the military judge denied the request.

During Appellant's unsworn statement, his civilian defense counsel told the members:

> [T]he Government denied an expert forensic psychologist to do a complete evaluation of [Appellant]. So [Appellant's] parents were able to afford to hire a forensic psychologist to consult with the legal team on a limited basis. And in doing so, he met with the forensic psychologist for a little bit, over four hours, face-to-face, but virtually, because of the pandemic. And he was administered tests; specifically the STABLE-2007. And the STABLE-2007 is an empirically validated instrument, which assesses risks to reoffend. There are thirteen STABLE risk factors, which have been empirically validated to reliably predict recidivism.
>
> In addition . . . [Appellant's parents] were both used as collateral sources to corroborate certain factors. And based on the results of that STABLE-2007, the forensic psychologist scored

---

[24] App. Ex. XLVII at 7.

[25] *Id.*

[Appellant] at a three—at a three which is at low risk to reoffend.[26]

Despite hiring the expert on their own and receiving the results and report of the testing conducted on Appellant, the defense never requested that their expert testify at the sentencing hearing. Nor did the defense seek to admit the report into evidence.

The defense raised the expert issue a fourth time, during the Government's sentencing argument, claiming the trial counsel had violated his earlier assurance to the court that the Government would not argue future dangerousness. Defense counsel pointed to trial counsel's comments regarding specific deterrence and that Appellant's sexual conduct with Allison only ceased when Appellant's wife reported it to his chain of command.

The military judge found that the trial counsel had not made "any type of future dangerousness argument," and "in fact, the way the whole thing stopped was that [Appellant's wife] reported it . . . . [T]hat's a fair comment on just the facts of the case . . . and goes to reflect the attitude of [Appellant] towards his crimes . . . . It [also] shows the aggravated nature of the crimes."[27] The military judge, noting the years-long nature of Appellant's criminal activity, further stated that "specific deterrence is a fair sentencing principal," and that he viewed trial counsel's argument as "just arguing that [Appellant] needs to, essentially, learn a lesson, needs to be told through a sentence how serious his offenses were."[28] In effect, to be specifically deterred.

### 3. Discussion

We find the military judge did not abuse his discretion. "An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law."[29] We find neither here. But we also note that this was a close call. Given the seriousness of the charges and the fact Appellant was facing a potential life sentence, we likely would have reached the same conclusion (i.e., that there was no abuse of discretion) had the military judge *granted* the expert request. Either way, the

---

[26] R. at 2378-79.

[27] R. at 2416-17.

[28] R. at 2417.

[29] *Lloyd*, 69 M.J. at 99 (citation and internal quotation marks omitted).

fact we may have ruled differently had we been in the military judge's shoes does not change the standard of review or the level of deference owed.

Even assuming the military judge did abuse his discretion in denying the expert, we find no prejudice. The only words the members heard regarding Appellant's risk of recidivism were what his counsel provided them during the unsworn statement: that Appellant was a "low risk." Although not funded by the Government, the defense team did obtain Dr. Bravo's STABLE-2007 testing of Appellant and did convey the results to the court.[30] Thus, Appellant had the benefit of Dr. Bravo's assistance—the very thing he sought. Further, that benefit went to the members uncontroverted; the defense's choice to submit the results in an unsworn statement and not call Dr. Bravo as a witness meant that trial counsel was neither provided a copy of the report containing the findings, nor able to cross examine the expert on it or any number of tests Dr. Bravo originally was requested to perform.

## C. Appellant's MacBook

In his next AOE, Appellant claims the military judge erred in admitting the contents of Appellant's MacBook laptop computer. These contents included extensive inculpatory communications between Appellant and Allison, as well as the child pornography Appellant asked Allison to produce and send to him and videos of the two engaging in sexual activity.

### 1. Standard of Review and Law

"We review a military Judge's denial of a motion to suppress evidence for an abuse of discretion."[31] In doing so, we "do not review [the military magistrate's] probable cause determination de novo," but look to whether the "magistrate had a substantial basis for concluding that probable cause existed."[32] And we "give great deference to the magistrate's probable cause determination because of the Fourth Amendment's strong preference for searches conducted

---

[30] We find it significant that Appellant's defense team did not seek to put the actual report into evidence. They could have done so, given the defense's ability to relax the evidentiary rules during sentencing. R.C.M. 1001(d)(3). Instead, civilian defense counsel chose to provide only his own interpretation of the results—in a manner immune from cross-examination or rebuttal.

[31] *United States v. Nieto*, 76 M.J. 101, 105 (C.A.A.F. 2017) (citation omitted).

[32] *Id.* (citations omitted) (alteration in original).

pursuant to a warrant."[33] If the magistrate "has a substantial basis to find probable cause, a military judge does not abuse his discretion in denying a motion to suppress."[34]

If a magistrate authorizes a search or seizure without a substantial basis to find probable cause, we will ordinarily apply the exclusionary rule.[35] However, the good faith exception may apply when a search is based on an authorization issued from a competent military or civilian authority, that issuing authority "had a substantial basis for determining the existence of probable cause," and the officials requesting and executing the authorization reasonably and in good faith relied on the authorization.[36]

While our application of the exclusionary rule extends to evidence derived or resulting from an illegal search, any evidence "later obtained independently from activities untainted by the initial illegality" may be admissible under the independent source doctrine.[37] When "analyzing whether a search pursuant to a warrant conducted after an illegal search was genuinely derived from 'an independent source' [we] must conduct a two-pronged inquiry."[38] We first ask "whether the police officer's decision to seek the warrant was prompted by information he gathered during the prior illegal search."[39] And second, whether "information obtained during the illegal search was presented to the magistrate that affected his decision to issue the warrant. If the Government fails either of these tests, the evidence is inadmissible."[40]

*2. The Searches*

During a 2016 interview, Allison told agents of the Naval Criminal Investigative Service [NCIS] that Appellant sent her pictures of his penis via Facebook Messenger or a cellular phone when she was eleven or twelve. She also

---

[33] *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)) (internal quotation marks omitted).

[34] *Id.* (quoting *United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007)).

[35] *Id.* at 106.

[36] M.R.E. 311(c)(3).

[37] *Murray v. United States*, 487 U.S. 533, 537 (1988).

[38] *United States v. Stevenson*, No. 200301272, 2009 CCA LEXIS 445, *27 (N-M. Ct. Crim. App. December 10, 2009) (unpublished) (citing *Murray*, 487 U.S. at 542).

[39] *Id.*

[40] *Id.*

described how she and Appellant regularly communicated through text messages and various social media applications, including Facebook, Pinger, and Facebook Messenger. And she explained how, in response to Appellant's requests, she took sexually explicit pictures of herself and sent them to Appellant using various social media applications.

Based on this and other information, NCIS agents sought and received a command authorization for search and seizure [CASS] to search Appellant's car. In the car the agents found a cell phone, which they later searched based on a separate CASS.

Appellant entered pretrial confinement on 11 January 2017. Members of his command then collected and inventoried all of Appellant's belongings located in his barracks room. A new CASS authorized NCIS to search the personal effects covered by that inventory, including an HP laptop computer. The same day that NCIS received the inventoried items, Appellant's friend, Sgt Baker, came to the NCIS office carrying a MacBook laptop computer and an external hard drive. He explained how Appellant, before entering confinement, had given him the items to keep, apparently to prevent them from being seized by NCIS. Sgt Baker expressed to NCIS that he no longer wished to hold the laptop and hard drive for Appellant.

The NCIS special agent [SA] on the case, SA Welcome, contacted a trial counsel on base to ascertain whether the earlier CASS for the inventoried personal effects covered the items Sgt Baker had just delivered. Being told (erroneously) that it did, SA Welcome did not seek a separate CASS for the MacBook or hard drive. He then proceeded to search the MacBook, finding nothing of evidentiary value.

Following Appellant's first court-martial and subsequent reversal and remand by this Court, NCIS Investigator [INV] Hammer sought a CASS covering, among other things, the MacBook computer and external hard drive. Appellant's commander signed the CASS on 14 February 2020, authorizing agents to search for "evidence of indecent electronic communications with a minor; electronic communications concerning Rape and Sexual Assault; receipt and possession of nude images of minor victim [Allison Sierra]."[41] A subsequent search of the MacBook laptop revealed more than 1,000 pages of relevant communications between Appellant and Allison, plus 26 sexually explicit images and five sexually explicit videos of Allison. Nothing of evidentiary value was found on the external hard drive.

---

[41] App. Ex. LVII at 48.

On 6 July 2020, the military judge granted Appellant's motion to suppress all matters found on the MacBook laptop.[42] In his extensive written ruling,[43] the military judge noted that, regarding the MacBook laptop, the Government was relying solely on the 14 February 2020 CASS. The military judge found that the probable cause in the affidavit accompanying the 14 February 2020 CASS request was insufficient to justify a search of the MacBook laptop. He cited the lack of any mention that Appellant had used a computer as an instrument of his alleged crimes, as well as the absence of any explanation of why there would be any evidence of alleged crimes on his computer. The affidavit merely stated that Appellant used his cellphone to facilitate his alleged crimes with Allison, making no connection between his cellphone and his MacBook laptop. The military judge wrote he was "at a loss to how this affidavit could be so woefully inadequate."[44] The military judge then declined to apply the good faith exception, finding that the NCIS agents did not have "an objectively reasonable belief that the commander[] [who issued the CASS] had a substantial basis for finding probable cause."[45] Finally, again citing the inexplicable inadequacy of the probable cause affidavit, the military judge found that the benefit of the deterrent effect of excluding the evidence found on the MacBook laptop was not outweighed by the high cost to the justice system.

Shortly after receiving notice of the military judge's ruling, NCIS applied for and received a search warrant in the U.S. District Court for the Southern District of California authorizing a search of the MacBook laptop. The supporting 17-page affidavit summarized pertinent facts and the case's procedural history to date. The affiant included only information gathered prior to 19 January 2017, ensuring that no evidence found during the 2020 search of the laptop was mentioned. The affidavit specifically stated that two prior searches had been attempted: one in 2017 with no results, and one in early 2020, the results of which were suppressed by the military judge based on insufficient probable cause. The affiant also explained that he was applying to a federal magistrate because he did not believe any of the military judges in the area would be untainted by the information suppressed by the military judge.

---

[42] App. Ex. LXXIII. As the Government conceded that nothing was found on the external hard drive, the military judge did not address that search in his ruling.

[43] App. Ex. LXXIV. We commend the military judge for the comprehensive, detailed findings of fact and thorough legal analysis contained in his written rulings on this matter.

[44] App. Ex. LXXIV at 35.

[45] *Id.* at 36.

Upon receiving the warrant, the same government expert that had performed the February 2020 search conducted a new search of Appellant's MacBook laptop. The NCIS agent instructed the examiner to perform the search as if it was his initial search of the computer; regardless, the examiner later testified that he had no memory of the specifics of the earlier search and had consulted none of his previous notes. The evidence he found in that August 2020 search was substantially the same as that discovered in the February 2020 search.

In his ruling on a subsequent motion to suppress the results of the August 2020 search, the military judge found the facts as described above and judged the digital forensics expert to be a completely credible technical professional who had "no desire to rely on the examination he conducted in February 2020."[46] Citing the independent source doctrine and finding (1) that the affiant did not omit any material information from the probable cause affidavit submitted to the federal magistrate, (2) that the magistrate was presented with sufficient probable cause to issue the search warrant,[47] and (3) that the August 2020 search was untainted by the prior unlawful searches, the military judge denied the defense motion to suppress the results of the August 2020 search of Appellant's MacBook laptop. It is this ruling that Appellant now claims as error.

*3. Discussion*

"An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law."[48] We find the military judge's extensive findings of fact to be well supported by the evidence presented and not clearly erroneous. We also find his well-reasoned, comprehensive analysis did not suffer from an erroneous view of the law. Accordingly, we find this AOE is without merit.

a. Federal Magistrate Involvement

While the chain of events may initially give one pause over concerns of forum shopping, we are confident this was not the case here. First, the record establishes that the District Court had jurisdiction over both the offense and the place where the object of the search warrant was located. Second, the supporting affidavit clearly explained why NCIS was seeking authority from the

---

[46] App. Ex. XCII at 14.

[47] The military judge further found that, "[e]ven if probable cause was lacking, . . . the good faith exception applies." App. Ex. XCII at 32.

[48] *Lloyd*, 69 M.J. at 99 (citation and internal quotation marks omitted).

District Court and not a military magistrate. As found by the military judge, NCIS went to great lengths to ensure nothing related to the earlier searches or any evidence collected after 19 January 2017 tainted the new warrant. The decision to seek a warrant from the District Court reflected the agents' belief in the fact it was unlikely that any military judge at Camp Pendleton would be free of knowledge of the case—particularly regarding the results of the February 2020 search.

Rather than view this as an attempted evasion of the exclusionary rule's effects, we see this as validation of the rule. The NCIS agents learned and applied the "harsh lesson" the military judge intended to deliver by excluding the evidence derived from the February 2020 search.[49] Being told their previous probable cause affidavit was "insufficient to establish PC,"[50] the agents set about correcting their failure. In doing so, they provided a much more robust, 17-page affidavit including all relevant evidence known as of the date of the original application for authorization to search Appellant's MacBook laptop. The military judge concluded that the last affidavit was both sufficient to establish probable cause and untainted by any activity after 19 January 2017. We agree.

### b. The Affidavit Contained Sufficient Probable Cause

Appellant claims the affidavit submitted by NCIS on 23 July 2020 did not provide sufficient probable cause to issue the warrant. Specifically, Appellant claims the affidavit did not establish a specific nexus between the alleged crime and the MacBook laptop. In support, Appellant cites *United States v. Nieto*, in which our superior Court held that a generalized claim that a person might upload images from a cellphone to a computer was insufficient to link the two.[51]

We find Appellant's reliance on *Nieto* inapt. Unlike in that case, here the affidavit relied on more than simply a possibility of uploading images between electronic devices. Rather, the affidavit focused on the communications between Appellant and Allison directly, demonstrating the probability that evidence of their communications (including images and videos) were sent directly to and from the MacBook. Allison told NCIS the two had communicated over social media applications, not simply via cellphones. These applications were accessible by both cellphone and computer. Also, the affidavit noted the fact that Appellant, knowing he was under investigation, gave his MacBook laptop

---

[49] App. Ex. LXXIV at 36.

[50] App. Ex. LXXIII at 1.

[51] *Nieto*, 76 M.J. at 107-08.

and hard drive to a fellow Marine to keep safe. Balanced against this information was Appellant's statement to NCIS that he used only his cellphone. But the government—as the military judge correctly stated—was not required to believe him.

### c. The Affiant did not Omit Material Information

Appellant next claims that NCIS agents acted with reckless disregard by omitting material information from the affidavit, specifically, that the military judge found the 19 January 2017 search unlawful and did not apply the good faith exception to that or the subsequent search. We fail to see how this materially differs from the actual language in the affidavit itself—that the search was done "pursuant to a [CASS]," but that the military ruled that the MacBook was not covered by that CASS.[52] And we believe it was obvious to the federal magistrate that the military judge did not apply the good faith exception—otherwise, the evidence would have been admissible, and the issue would not be before him. Accordingly, we agree with the military judge's ruling that no material information was omitted.

### d. The Federal Warrant Provided an Independent, Untainted Source of Evidence

The August 2020 warrant application sought only to search Appellant's MacBook, not the external hard drive also delivered by Sgt Baker. Appellant points to this as evidence that this application was tainted by the fact that NCIS, via its earlier search, knew there was incriminating evidence only on the MacBook laptop. But this turns the issue on its head. That NCIS did not seek a warrant to search a device it knew contained no evidence is of no import. What matters is that NCIS, as the military judge correctly found, had twice searched the MacBook laptop in the belief that it contained evidence of a crime—the second time after having not found anything in the earlier, 2017 search. This shows that NCIS still held a sincere belief in January 2020 that the MacBook contained relevant evidence, evidence that improved search capabilities would reveal. The fact that NCIS sought the third search after discovering such evidence on the MacBook in no way erases the fact NCIS believed probable cause existed prior to both previous searches.

Appellant next claims the August 2020 search was tainted by the results of the illegal January 2020 search as both were conducted by the same government expert. Having reviewed the record, we agree with the military judge's findings that (1) the examiner was instructed to perform the search as if he

---

[52] App. Ex. LXXIV at 33.

had never examined the MacBook laptop, and (2) the examiner had no memory of having conducted the previous search. We are therefore convinced this issue did not taint the results of the August 2020 search.

Accordingly, we conclude the military judge did not abuse his discretion in denying Appellant's motion to exclude the results of the August 2020 search of his MacBook laptop.

## D. Sentence Appropriateness

Appellant claims that his sentence of 30 years, total forfeitures, reduction to pay grade E-1, and a dishonorable discharge is inappropriately severe, given that he was denied an expert consultant regarding recidivism and that his pending prosecution in Nevada state court prevented him from being as contrite as he wanted to be in his unsworn statement. We disagree.

We review sentence appropriateness de novo.[53] This Court may only affirm "the sentence, or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved."[54] In exercising this function, we seek to ensure that "justice is done and that the accused gets the punishment he deserves."[55] The review requires an "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender."[56] We have significant discretion in determining sentence appropriateness, but may not engage in acts of clemency.[57]

A court-martial shall impose punishment that is sufficient, but not greater than necessary, to promote discipline and to maintain good order and discipline.[58] Among other factors, the sentence needs to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, promote adequate deterrence of misconduct, protect others from further crimes by the accused, and rehabilitate the accused.[59]

---

[53] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[54] Article 66(d)(1), UCMJ.

[55] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[56] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (citation and internal quotation marks omitted).

[57] *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

[58] R.C.M. 1002(f).

[59] R.C.M. 1002(f)(3)(A)-(F).

Here, Appellant was found guilty of, inter alia, sexually abusing a child under age twelve; sexually assaulting a child under age twelve; sexually assaulting a child under age sixteen; possessing child pornography; and soliciting a child under age 16 to create child pornography. He faced a maximum punishment of life without the possibility of parole.

Appellant raped and assaulted Allison over a period of nearly four years, beginning when she was an eleven-year-old fifth-grader. Isolating her at his home, he forced her to drop out of in-person school. He repeatedly pushed her to find other persons with whom they could engage in three-way sex. When Allison objected, Appellant responded with violence. Years later, she has difficulty overcoming the effects of his years-long abuse.

Against this evidence of depraved conduct and its aftermath, Appellant offered the fact that he presents a low risk of recidivism based on the results of the STABLE-2007 test. He also presented extensive documentation of his military service, as well as the testimony of numerous character witnesses. He described to the members his efforts to understand and improve himself. And he expressed his remorse, although explaining how the potential of prosecution in state court limited his ability to fully express how sorry he was. He was not precluded, as he claims, from making a case for leniency.

Weighing the evidence, we find that Appellant's sentence was adjudged with individualized consideration based on both the nature and seriousness of his offenses, and Appellant's character. After reviewing the record as a whole, we find the sentence to be correct in law, that it appropriately reflects the matters in extenuation, mitigation, and aggravation presented, and that it should be approved.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[60]

The findings and sentence are **AFFIRMED**.

---

[60] UCMJ arts. 59, 66.



FOR THE COURT:

S. TAYLOR JOHNSTON
Interim Clerk of Court